CASE 114—INDICTMENT—MARCH 3.

# Moore v. Commonwealth.

### APPEAL FROM HARDIN CIRCUIT COURT.

1. THE FORGERY OF A WITNESS CERTIFCATE against the State is embraced by the statute which provides for the punishment of any person who shall forge any writing "whereby fraudulently * * * to deprive another of any money or property, or cause him to be injured in his estate." The word "another" embraces the State, and its meaning is not limited to individuals by the subsequent use of the personal pronoun.

2. SAME.—The fact that one is authorized to sign the clerk's name to witness certificates, does not give him authority to make a false certificate, and if he does so he is guilty of forgery.

3. ONE MAY BE GUILTY OF FORGERY BY EXECUTING A WRITING IN HIS OWN NAME, if it be false in a material part and calculated to induce another to give credit to it as genuine.

4. AN INDICTMENT in setting forth a statutory offense need not follow the language of the statute. Therefore, an indictment for forging a witness certificate against the State need not aver that it was done in order to deprive the State of any money or property, or to injure it in its estate. It is sufficient to aver that it was done with the intent to cheat and defraud the State.

5. EVIDENCE OF INSANITY.—Under a plea of insanity in a criminal case, if there is testimony tending to show that the defendant's affection is of a continuing or permanent character, it is competent to prove his mental condition after as well as before the time when the act was done.

6. To SUSTAIN A PLEA OF INSANITY in a criminal case the defendant must show insanity by a preponderance of the evidence.

HOBSON & O'MEARA, E. D. WALKER, T. A. ROBERTSON FOR APPELLANT.

1. The forgery of a witness certificate is not embraced by either section 5 or section 7 of article 9, chapter 29 General Statutes.

Moore v. Commonwealth.

2. The indictment can-not be sustained under section 7 of the statute even if that section applies, because it is not alleged that defendant made the paper in contest with a fraudulent purpose to obtain the possession of any money or property, or to deprive the Commonwealth thereof, or cause it to be injured in its estate or legal right. The particular interest must be specified. (1 Bishop Crim. Pro., sec. 523.)

3. In order to make a witness certificate the subject of forgery, extrinsic facts must be stated, showing how the Commonwealth could have been defrauded, for on its face it could not be presumed to have such an effect. (2 Bishop on Criminal Law, secs. 544-5; Freeman's notes to Arnold v. Cest, 22 Am. Dec., 814; Note to Hendricks v. State, 8 Am. St. Rep., 469; King v. State, 11 Am. St. Rep., 203; State v. Smith, 8 Yerg, 150.)

4. The indictment is bad because it does not specify what the particular acts are which defendant did. (Stowers v. Commonwealth, 12 Bush, 342; Commonwealth v. Williams, 13 Bush, 267; Mount v. Commonwealth, 1 Duv., 90; Foster v. Commonwealth, 12 Bush, 873; Glacken v. Commonwealth, 3 Met., 233; Commonwealth v. Dudley, 3 Met., 221; Furnish v. Commonwealth, 14 Bush, 180.)

5. There was a fatal variance between the allegations and proof. The indictment charged a making of the paper without authority, the proof showing if anything authority to make the paper, but that it was false.

6. It was error to exclude evidence as to the condition of defendant's mind after the making of the paper in contest. (2 Bishop Crim. Pro., secs. 674 and 687.)

7. The instruction of the court did not present to the jury the law of insanity properly. The burden is on the State to prove felonious intent and never shifts to defendant, though he is presumed sane. (2 Bishop Crim. Proc., secs. 669-671; 72 Cal., 623; People v. Riordan, 117 N. Y., 71; People v. Downs, 123 N. Y., 558.)

8. Unless defendant intended to defraud the Commonwealth, there could be no conviction, although he intended a fraud on another, for the specific intent alleged must be proved as laid. (Flaugher v. Commonwealth, 1 Ky. Law Rep., 119; 1 Bishop Crim. Pro., 523; Freeman's note to Arnold v. Cest, 22 Am. Dec., 513.)

9. The court having instructed on the presumption of sanity, should also have given defendant the benefit of the presumption of innocence, which is equally prevailing. (Holloway v. Commonwealth, 11 Bush, 351.)

WM. J. HENDRICK, Attorney General, R. REID ROGERS for APPELLEE.

A preponderance of testimony is necessary to establish insanity as a defense to crime. (Graham v. Commonwealth, 16 B. M., 587; Smith v. Commonwealth, 1 Duv., 228; Kriel v. Commonwealth, 5 Bush, 37;

Insurance Company v. Graves, 6 Bush, 291; Brown v. Commonwealth, 14 Bush, 402; Ball v. Commonwealth, 81 Ky., 662; Kaelin v. Commonwellth, 84 Ky., 357; Wharton on Criminal Law, vol. 1, sec. 62; Biswell v. State, 68 Ala., 307; McKenzie v. State, 26 Ark., 334; People v. Wilson, 49 Cal., 13; State v. Johnson, 40 Conn., 136; Carter v. State, 56 Ga., 463; 27 La. Ann., 691; State v. Lawrence, 57 Me., 574; Commonwealth v. Eddy, 7 Gray, 583; State v. Green, 29 Minn., 221; State v. Erb, 74 Mo., 199; State v. Payne, 86 N. C., 609; Bergin v. State, 31 O. St., 111; Myers v. Commonwealth, 83 Pa., 141; Webb v. State, 9 Tex. App., 490; De Jarvette v. Commonwealth, 75 Va., 867; State v. Robinson, 20 W. Va., 745; Reg. v. Turton, 6 Cox C. C., 385.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT. ·

The charge is forgery of a witness certificate against the State. It is urged the statute does not embrace such a case. It provides:

· " If any person shall forge or counterfeit any writing whatever, whereby fraudulently to obtain the possession of, or to deprive another of, any money or property, or cause him to be injured in his estate or lawful rights, or if he shall utter and publish such instrument, knowing it to be forged and counterfeited, he shall be confined in the penitentiary not less than two nor more than ten years."

It is said the word, " another " is plainly so limited by the succeeding words, " or cause *him* to be injured in *his* estate," as not to include the State; and that there is no statute to punish one, if it be the object of the fraud. Such a legislative omission would be singular. If the contention be well grounded, then but for the statutory rule that a word importing the masculine gender shall apply to females, it would only be when the fraud relates to a man, that the offender could be punished. If perpetrated upon a body-politic, or a society or a corporation, there is no statute embracing the case.

While criminal laws are to be strictly construed, yet their letter is not to be so far followed as to render them ineffectual to suppress the mischief. The words referred to were evidently intended merely to mean the party intended to be defrauded. It is manifest this was the legislative intention. The word, "another," means a different person ; and the word "person" by our statute includes corporations, societies, bodies-politic and the public generally, as well as individuals. After properly using a word so comprehensive, it can not well be supposed it was intended to limit its meaning as contended, by the use of the pronoun. It was used as equivalent to the word, "another," which in legal meaning embraces the State.

It is next said the indictment is defective because it does not aver that the certificate was forged in order to deprive the State of any money or property, or to injure it in its estate. It does however aver that it was done with the intent to cheat and defraud it. An indictment in setting forth a statutory offence must not follow the language of the statute. It is sufficient if it does so in substance, as is the case here. It is also sufficiently specific as to the act of the accused. It avers, after using the proper legal words necessary to such a charge, that he forged the certificate, which is then fully set forth. He was at the time not a sworn, or regular deputy of the clerk of the court, but was acting as such with authority to issue certificates in the clerk's name to witnesses who were in attendance upon the court. He signed the clerk's name to the certificate, but there is evidence showing the person in whose favor it issued was not in attendance as a witness.

It is therefore urged the request of the accused to direct the jury to find him not guilty should have been granted upon the ground that there was a fatal variance between the charge in the indictment and the evidence. In other words, that he was charged with making the paper without authority, while the evidence showed he was authorized to sign the clerk's name to it, but that it was false. He had no authority however to make a false certificate. It could not have been conferred. Although he was authorized to sign the clerk's name to witness certificates, yet if he did so to a false one made out by him, it was forgery. It, says Blackstone, is "the fraudulent making, or alteration of a writing to the prejudice of another man's rights." Another leading writer says it is "the false making, or materially altering " with intent to defraud, of any writing, which if gen- " uine, might apparently be of legal efficacy, or the " foundation of a legal liability." (1 Bishop on Criminal Law, section 572).

The clerk himself would be liable to the charge of forging a false witness certificate, although signed by him, if it were in fact false. It purports to be an obligation upon the State. If genuine, it evidences an indebtedness upon its part. One may be guilty of the false making of an instrument, although signed and executed in his own name, if it be false in a material part, but calculated to induce another to give credit to it as genuine. (1 Hale P. C., 683).

In the case of the Commonwealth v. Wilson, 89 Ky., 157, it was so decided. It was there held that a county surveyor, who with intent to defraud the State, made a plat and certificate of a survey, purporting to have been

made by him, when in fact none had been made, was guilty of forgery.

The accused relied upon insanity at the time of the making of the certificate. He proved personal injuries to himself in the past, which might affect the mind. Testimony was introduced as to his mental condition both before and at the time of the making of the certificate, tending to show he was not of sound mind. There was evidence conducing to show that his condition in this respect had up to the time of the making of the certificate for years been gradually growing worse. It is not proper for this court to indicate any opinion as to the value or weight of this testimony. The trial court properly regarded it however as sufficient to authorize the submission to the jury of the question of insanity; and yet it rejected all the evidence that was offered by him as to the condition of his mind subsequent to the time of the alleged commission of the offence. This was error. It would have tended to illustrate his mental condition when he issued the certificate. To sustain this defence the evidence must of course show the party to have been insane at the time of the doing of the forbidden act. It is of course not sufficient to show that he was insane before or after; but if there be testimony, as there was in this instance, tending to show that his affection is of continuing or permanent character, then it is competent to prove his mental condition after as well as before the time when the act was done.

Bishop says: "The insanity proved must relate to the time when the act complained of was committed, it not being sufficient that the defendant was insane before or after, if not also then. Yet when the question is of

permanent insanity, its existence at the time of the trial, or at any other time after, or especially before the commission of such act, may be shown as the foundation for the presumption that the state of mind proved is continuing, and what exists at one time, exists also at another." (2 Bishop's Crim. Pro., section 674).

The jury were told: " The law presumes the defendant at the time he committed the act, if he so did, of sound mind; and unless the jury believe from a preponderance of the testimony that at that time he was not of a sound mind * * * the law is for the defendant, and the jury should so find."

This instruction was refused: " If on all the facts and circumstances in the case the jury have a reasonable doubt as to whether the defendant was of sound mind at the time of making the certificate they should acquit him."

There is a conflict of decision as to the degree of evidence which the instructions should require to support the defence of insanity. All concur, however, that the contest opens with the legal presumption of sanity against the defendant. Some of the cases say that he must show affirmatively his insanity at the time of the wrongful act, taking upon himself what some courts have called the burden of proof, and others a legal duty to overcome the legal presumption of sanity. By what weight of evidence this is to be done courts are not in full accord. A few of them have decided that the insanity must be shown beyond a reasonable doubt; others, that if upon the entire testimony there is a reasonable doubt of his sanity an acquittal should follow, while many others hold that the insanity should be shown by a

Moore v. Commonwealth.

preponderance of the evidence, and this last appears to be the rule in this State and in our opinion correct in principle and policy.

As the accused is presumed to be sane, there must be sufficient evidence to overturn this presumption. Having done the wrongful act, he says I am irresponsible. The plea is a special one, and should at least be supported by evidence upon his part sufficient to create the belief of its truth in the minds of the jury. This is necessary to rebut the presumption of sanity, and to the proper protection of society. While the mind revolts at the idea of punishing an irresponsible being, yet leniency should not go so far as to endanger the security of the public. The plea of insanity is peculiarly open to abuse. It is often resorted to in extremity. It opens a wide range of inquiry. Facts to support are easily manufactured. It invites the jury into a field of speculation, where they are likely by means of conflicting expert testimony and opposing and uncertain opinions, to become lost in doubt and confusion, and their verdict often a matter of mere conjecture. It seems to us therefore that it is a safe rule, founded both in reason and sound policy, as well as sanctioned by observation and judicial authority, to place the burden of showing insanity upon the party who relies upon it to shield him from punishment for his wrongful act. The examination we have made shows this to be the rule in a majority of the States of the Union, and in this State it may now be regarded as the settled rule, as will be found by an examination of the cases of Kriel v. Commonwealth, 5 Bush, 372; Brown v. Commonwealth, 14 Bush, 398; Ball v. Commonwealth, 81 Ky., 662, and Kaelin v. Commonwealth, 84 Ky., 354.

We have considered the instructions that were given, and refused, in view of another trial. No error appears in this respect, but for that above indicated the judgment is reversed, and cause remanded for another trial consistent with this opinion.