## J. W. GRAHAM V. THE STATE.

No. 13282.   Delivered November 12, 1930.
Rehearing Granted May 4, 1932.
State's Rehearing Denied June 15, 1932.
Reported in 51 S. W. (2d) 369.

Lattimore, Judge, dissenting.
The opinion states the case.

*Saunders & Whipple* and *John C. Wall,* all of San Antonio, for appellant.

*K. W. Woodley,* of Sabinal, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—This conviction was for forgery; punishment, two years in the penitentiary.

The instrument upon which the forgery was predicated purported on its face to be an official act of the clerk of the commissioners court. Same is as follows:

"21631                                                                 $511.65

"The Treasurer of the County of Uvalde

        "State of Texas.

"Will pay to J. W. Graham or order the sum of Five Hundred Eleven & 65/100 Dollars out of the_____Fund, being the amount allowed by the County Commissioners Court, of said County at their Sept. Term, 1927.

"Witness my hand and Seal of said Court at Uvalde, Texas, this 12 day of Sept. 1927.

                                        "J. W. Graham, County Clerk.

" (Seal)_____, Deputy.

"For Bill—Transcribing Record D.

"Min Book_____, Page_____

"No._____ _____Class

"Registered the _____day of_____192___

"_____, County Treasurer."

Beyond doubt every element of the offense of forgery as defined and comprehended by our statutes, appears in the instant record, if the alleged forged instrument in writing "purports to be the act of another." This latter question we will presently discuss.

Forgery in terms of our statute is to "make false instrument in writing purporting to be the act of another." Article 979, P. C. Originally, and until 1856, forgery in Texas was defined as the "False making of an instrument in writing," etc. Hartley's Digest, article 1438. Attention is called to this change in the verbiage of our forgery statute because the real or imaginary difference between the making of a false instrument in writing,—and the false making of an instrument in writing,—has afforded basis for what, in the language of Judge Ramsey, may be called "Much curious learning," and discussion in forgery cases. The case of Goucher v. State, 113 Neb., 352, 204 N. W., 967, set forth and annoted in 41 A. L. R., 227, and other cases cited in said report, which are supposed to have bearing on the decision of the instant case, are cases resting upon construction of statutes which define forgery as the false making of an instrument in writing, and the conclusion is announced in those cases that there is a grave distinction between the "false making of a writing" and the "making of a false writing." As said in Territory of New Mexico v. Gutierrez, 13 N. M., 312, 84 P., 525, 5 L. R. A. (N. S.), 378, cited in the Goucher case, supra: "The former term contemplates a certificate which is not genuine, while the latter imports a genuine certificate, the contents or allegations of which are false." In the annotations of the Goucher case, supra, as illustrative of the holdings upon statutes similar in

definition to ours, we quote the following taken from the volume at page 250 of 41 A. L. R.: "Under the peculiar wording of the Tennessee forgery statute, which provides that 'forgery is the fraudulent making or alteration of any writing to the prejudice of another's rights,' it was quite properly held in Luttrell v. State (1886), 85 Tenn., 232, 4 Am. St. Rep., 760, 1 S. W., 886, that a man could, under it, be guilty of forgery in making a paper writing and signing his name to it, and a justice of the peace who incorporated in his bill of costs against the county a fictitious case therein, and charged for it, was held guilty of forgery. It is to be noted that this statute does not employ the words 'falsely make' and the other words ordinarily used in defining forgery."

Without further entry into discussion of the interesting issue as to the soundness of those cases upon statutes differing from ours, we affirm that under our state,—other things necessary to guilt being shown,—there remains in the instant case but two points germane, viz: Did appellant make a false instrument in writing; if so, did it purport to be the act of another?

The instrument set out above and made by appellant was plainly without lawful authority; was intended to and did injure and defraud, and was sufficient to and did transfer money. Same was a warrant drawn on the county treasurer of Uvalde county for $511.65, bearing the seal of said county and attested by "J. W. Graham, County Clerk," and purported to be by authority of the commissioners court of said county. The county clerk is ex-officio clerk of the commissioners court. Article 1940, Rev. Civ. Stats. All warrants issued against the county treasurer shall be signed and attested by the clerk or judge of the court issuing same, under his official seal. Article 1643, Rev. Civ. Stats. The courts have held that a copy of an order of the commissioners court allowing a claim, certified and attested by the clerk, under the seal of the court, is sufficient to justify the county treasurer in paying the amount from county funds. Callaghan v. Salliway, 5 Texas Civ. App., 239, 23 S. W., 837.

The warrant above set out was paid to appellant by the county treasurer. That it was a false warrant is attested by the uncontroverted fact that the commissioners court had allowed and ordered paid to appellant by warrant the sum of $11.65,—and that wholly without substantial claim or right or authority he had made the warrant call for $500 more than the correct amount.

The warrant was made of seeming validity by the attestation of the official signature of the clerk of said court and the affixing of the seal of said court.

Article 988 of our Penal Code is as follows: "The instrument must purport to be the act of 'another,' and within the meaning of this word, as used in defining forgery, are included this State, the United States, or

either of the States or Territories of the Union; all the several branches of the government or either of them; all public or private bodies, politic and corporate; all courts; *all officers; public or private, in their official capacity;* all partnerships in professions or trades; and all other persons, whether real or fictitious, except the person engaged in the forgery."

It will be noted that within the meaning of the word "another," *as used in defining forgery,* are included "All courts; all officers * * * in their official capacity." In other words, and whether the reasoning and analogy will hold good in other instances and situations or not,—by virtue of the statute above quoted, one who makes a false written document so as that it purports to be the act of a court or a public official in his official capacity,—even though such official be the accused himself, —is guilty of making a false instrument purporting to be the act of another.

It is safe to say that a document signed by appellant as a private individual, without pretense that same was the act of a court, and without the seal of said court, would be without lawful efficacy as a county warrant calling for the payment of money by the county treasurer; also that such document when in form as is the instant warrant, is another and wholly variant instrument if genuine, and we confess our inability to see why the law-makers might not, if they so desired, say, for the purpose of defining the elements of forgery, that the act of a private individual became and was the act of "another" when such private individual sign his own name to a false and fraudulent document, with such designation and language as to make same appear as that of a public official, verifying and giving validity to such writing.

Commonwealth v. Wilson, 89 Ky., 157, 12 S. W., 264, 11 Ky. Law Rep., 375, 25 Am. St. Rep., 528; Commonwealth v. Howard (Ky.); 12 S. W., 265, 11 Ky. Law Rep., 378; Moore v. Commonwealth, 92 Ky., 630, 18 S. W., 833, 13 Ky. Law Rep., 738.

If the private person who holds the clerk's office, and the county clerk acting officially, be one legal entity, incapable of separation by law, why require the official designation in any case? Legal process of many varieties would receive no sanction whatever if signed and attested only by the private person who had been inducted into the office of county clerk and clothed with resultant powers. If the two be in no sense distinct, what necessity for a formal act of the Legislature requiring the official signature of such officer in order to validate legal documents? The reasoning holds good as to all public officials. A deed signed only by the private person who was sheriff of Uvalde county, would not convey title to properly sold at sheriff's sale. So on ad libitum. Manifestly a writing in form such as is here involved,—without the seal of the court and the attestation of the clerk of the court, would be of no validity,— void on its face, and not the subject of forgery. Illustrations could be

as numerous as desired. By the law offices are created, and their occupants vested with all sorts of rights and powers as such to bring into existence documents which would affect property and increase or decrease pecuniary obligations, none of which could be done by them as individuals. Are the courts to say that the Legislature has no power to decree in so important a matter as forgery, and in cases in which otherwise officers could so easily defraud, that when a person acts as an officer in his official capacity he is "another" than the private individual? We do not think so, and are of opinion that the indictment in this case is sufficient, and that the facts meet the allegations in the indictment. The written instrument in this case does not purport to be the act of a private person, but of such person as our Legislature in its sovereign wisdom in such matters has seen fit to designate as "another," to-wit: "A public official acting in his official capacity."

We have carefully examined each of the other complaints, many of which overlap, as they appear in the record. It would seem manifest that the acquittal of the accused on a charge of passing a forged instrument, could not in law be made the basis for a plea of former acquittal when he is brought to trial for the forgery of the document for the passing of which he was acquitted, and the court below did not err in declining to consider and submit a plea presenting the theory of former acquittal.

We have considered the various objections to the charge, but do not deem a discussion of any of them of any value to the profession, or necessary to make apparent our conclusion that the objections were not sound. We see no reason for discussing the special charges seeking to have the court tell the jury that unless they found appellant intended to injure and defraud, they should acquit. Each of these charges seems fully covered by the main charge, which on this point was specially full.

Being unable to discover any error in the action of the trial court as revealed by this record, the judgment will be affirmed.

*Affirmed.*

Hawkins, J., absent.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—It is alleged in the indictment that appellant "* * * without lawful authority and with intent to injure and defraud did wilfully and fraudulently make a false instrument in writing to the tenor following:

"21631          $511.65

"The Treasurer of the County of Uvalde

   "State of Texas.

"Will pay to J. W. Graham or order the sum of Five Hundred Eleven & 65/100 Dollars out of the_____Fund, being the amount allowed

by the County Commissioners Court, of said County at their Sept, Term,
1927.
"Witness my hand and Seal of said Court at Uvalde, Texas, this 12 day
of Sept. 1927.

"J. W. Graham, County Clerk.

"(Seal)_____, Deputy.
"For Bill—Transcribing Record D.
"Min Book_____, Page_____
"No._____ _____Class
"Registered the_____day of_____192___
"_____, County Treasurer."

In the Penal Code, article 979, forgery is defined as follows: "He
is guilty of forgery who without lawful authority, and with intent to
injure or defraud, shall make a false instrument in writing *purporting
to be the act of another,* in such manner that the false instrument so made
would (if the same were true) have created, increased, diminished, dis-
charged or defeated any pecuniary obligation, or would have transferred,
or in any manner have affected any property whatever."

It may be conceded at the outset that appellant made the instrument
in question without authority, because the commissioners court had only
approved appellant's account for $11.65; it may be further conceded that
under the facts proven he made the instrument with intent to injure and
defraud. All this may be true and yet appellant cannot be guilty of for-
gery unless the instrument "purported to be the act of another." Article
8, P. C. provides that all words, terms or phrases used in the code are
to be taken and construed in the sense in which they are understood in
common language unless thier meaning is specially defined. The ordinary
meaning of "another" is: "Not the same, different, any or some other,
any different person, and one else, some one else;" most definitions having
reference, in the ordinary use of the word, to some other person. The
Legislature knowing that such would be the meaning ascribed to such
word in the definition of forgery, and desiring that it have in that respect
a broader signification, provided in article 988, P. C., as follows: "The
instrument must purport to be the act of 'another,' and within the mean-
ing of this word, as used in defining forgery, are included this State, the
United States, or either of the States or Territories of the Union; all
the several branches of the government or either of them; all public or
private bodies, politic and corporate; all courts; all officers, public or pri-
vate, in their official capacity; all partnerships in professions or trades;
and all other persons, whether real or fictitious, *except the person engaged
in the forgery.*"

Bearing in mind the last sentence of said article the meaning seems
clear that "another" does not refer to the person engaged in the forgery,
but means that if the person engaged in the forgery makes an instru-

ment purporting to be the act of any of the agencies of government, courts, or officers named in the article it would purport to be the act of "another." If a third party had made the instrument and signed appellant's name as county clerk, it would have purported to be the act of "another." In the opinion of the writer the statute has no application to appellant's own act in signing his name in his official capacity. There is much similarity between such an act and one in which a party signs to an instrument the name of his principal by himself as agent. (See recent case of Simms v. State, 116 Texas Crim. Rep., 97, 32 S. W. (2d) 852). The order of the commissioners court approving appellant's account for $11.65 was the act of the court. If appellant had made an instrument purporting to be an order of said court approving the account for the sum of $511.65, such instrument would have purported to be the act of "another" in contemplation of the statute. The instrument declared on does not purport to be the act of the court. It does purport to reflect what the court had done, for it says, "being the amount allowed by the county commissioners court of said county at their Sept. term, 1927," but further than that it does not go.

If appellant had written a letter directed to the treasurer of the county advising him that the commissioners court had allowed appellant's account for $511.65, and advising the treasurer that he was thereby authorized to pay such amount to appellant and had signed the letter in his official capacity, who would have contended that the instrument purported to be anything more than the act of appellant as the clerk? Does the instrument declared on go further than that? If the drawer of the indictment in the present case had followed the form which is sometimes used, and had alleged that appellant, without lawful authority, had made a false instrument in writing purporting to be the act of another, to-wit, the act of the commissioners court of Uvalde county, and had then set out the instrument by its tenor, as now copied in the indictment, there would have immediately appeared a repugnance between the purport clause and the tenor clause of the indictment. On the other hand, suppose it had been alleged that appellant made a false instrument in writing purporting to be the act of the county clerk, and then set out the instrument declared on. It would have been immediately discovered that the indictment was bad because the instrument declared on was executed by the very person whom the purport clause declared to have been "another." The alleged forged instrument was either the act of the commissioners court or it was the act of appellant in his capacity of county clerk. By no sort of legerdemain can the signature of an officer in his official capacity be said to have been the act of the individual independent of the official capacity in which he assumes to act. If A held a commission as notary public could he take his own acknowledgment to a deed executed by him and contend that the acknowledgment was legal because A as an

individual was an entirely different person from A as a notary public?

We regard as directly in point the case of Mann v. People, from the state of New York, which has a statute similar in all respects to ours in the particulars here being investigated. The case will be found reported first in volume 22 of the Supreme Court Reports of the State of New York (15 Hun.) 155. Mann was indicted for making the following instrument:

"No._____                    "Saratoga County Treasurer's Office,
                              "Ballston Spa, June 16, 1875.

"In pursuance of a resolution passed November, 1874, by the board of supervisors of Saratoga County, the county of Saratoga promises to pay, at the Saratoga county treasurer's office, on or before the 15th day of February, 1876, to First National Bank, Ballston Spa, or bearer, ten thousand dollars, at seven per cent interest, for value received.

"$10,000.                    "Henry A. Mann, Treasurer."

The New York statute under which the indictment was drawn provides that a person should be guilty of forgery, who, with intent to defraud, makes "* * * an instrument in writing, *being or purporting to be, the act of another,* by which a pecuniary demand or obligation shall be, or shall be purported to be, or to have been created, increased, discharged, or diminished, or in any manner affected, or by which any rights or property whatever are purported to be, or to have been created, transferred, conveyed, discharged, increased, or diminished, or in any manner affected."

The Supreme Court of the State of New York, in discussing the question, says: "* * * The counsel for the pueople urges that the writing in this case purports to be the act of another, viz., of the county of Saratoga, and that it was falsely made by the prisoner. That argument was used in Regina v. White (ut supra), as appears by the report: 'Pollok, C. B. It purports to be the name of a party, written by his authority, and it is his name, written without that authority. Willmore (for the prisoner): Rather it purports to be the writing of the prisoner, and it is so.' And so the court finally held. Now, it is true that so far as civil obligations and rights are concerned, we are accustomed, in order to express the binding effect of an agent's acts, to say that the act of the agent is the act of the principal. This is a convenient way of stating, in brief language, that, when an agent is authorized, his act binds, not himself, but his principal, just as if it were the act of the principal. But we do not mean that the act is literally that of the principal. The instrument in question purported to be the act of Henry A. Mann. It may be that it purported to be legally binding on the county of Saratoga. But the act,—that is, the doing the physical act as distinct from the legal effect—was the act of the prisoner. There is undoubtedly a sense, as urged by the counsel for the people, in which such an instrument may be

said to purport to be the act of the county. But that is a statement of the legal effect. As a matter of fact, the instrument purports to be the act of Mann. He signed it in his own name, adding the title of his office —an office which he legally held."

The Supreme Court of the State of New York held Mann not to be guilty of forgery and reversed the judgment of conviction. Not being satisfied the People appealed. The result of that appeal will be adverted to later, but we desire first to call attention to the similarity of the cases. In Mann's case he as treasurer certified that the warrant or certificate would be paid or was authorized "in pursuance of a resolution passed November, 1874, by the board of supervisors of Saratoga county." In the present case appellant, as county clerk, in effect certified that the sum of $511.65 was the "amount allowed by the county commissioners court of said (Uvalde) county at their September term, 1927." Now, reverting to the opinion of the Court of Appeals of New York, People v. Mann, 75 N. Y., 484, 31 Am. Rep., 483, the court said: "We cannot adopt the interpretation of this statute claimed by the counsel for the People. He contends that one who without authority makes an instrument purporting in its body to be the contract or obligation of a county, though he signs his own name to it as the official representative of the county, comes within the purview of the act. That the words 'purporting to be the act of another' are synonymous with 'purporting to be the contract or obligation of another.' We think that the 'act' referred to in the statute is the making of the instrument, and that the offense consists in falsely making an instrument purporting to be made by another. *The offense intended to be defined by the statute is forgery, and not a false assumption of authority. One who makes an instrument signed with his own name, but purporting to bind another, does not make an instrument purporting to be the act of another. The instrument shows upon its face that it is made by himself and is in point of fact his own act.* It is not false as to the person who made it, although by legal intendment it would, if authorized, be deemed the act of the principal, and be as binding upon him as if he had actually made it. The wrong done, where such an instrument is made without authority, consists in the false assumption of authority to bind another, and not in making a counterfeit or false paper." (Italics ours).

The principle recognized and discussed by the New York courts will be found to have been approved in State v. Wilson, 28 Minn., 52, 9 N. W., 28; State v. Taylor, 46 La. Ann., 1332, 16 So., 190, 25 L. R. A., 591, 49 Am. St. Rep., 351.

Although appellant may not be guilty of forgery the state is not remediless. Article 359, P. C., provides: "If any such clerk shall give a false certificate, stating that any person has done any act whatever, to which he has a right to certify, or that such person is entitled to any

right whatever, when such clerk may by law give such certificate if the same were true, he shall be punished as directed in the preceding article."

From what has been said it appears that the writer is of opinion that appellant can not be held guilty of forgery, however reprehensible his conduct may have been, and that the motion for rehearing should be granted, the judgment of affirmance set aside, and the judgment of the trial court should be reversed and the cause remanded.

*Reversed and remanded.*

MORROW, PRESIDING JUDGE (coucurring).—In the record there appears a special plea of former acquittal asserting that the accused had been indicted, tried and acquitted for making a false certificate as denounced by article 359, P. C., 1925. That plea, properly verified, might present a serious question, but in the absence of vertification, as provided by article 509, C. C. P., the trial court was not authorized to consider the plea, and his failure to do so presents no matter for review.

The interpretation of the word "another," as it appears in article 988, P. C., has given the members of this court much concern and difficulty. Whether the facts set forth in the indictment charge the offense of forgery is a subject upon which the writer is somewhat perplexed.

In the case of Mann v. People, 15 Hun., 155, discussed in the opinion of my Brother HAWKINS, there appear cogent reasons supporting the conclusion that the false certificate of Henry C. Mann, treasurer, would not support the conviction of forgery. The reasoning in the Mann case, supra, is applicable to the present appeal, though, in the statutes of New York, so far as the writer has been able to ascertain, the definition of the word "another," found in our statute (article 988, supra), is not embraced. While not without some doubt on the subject, I feel constrained to follow the reasoning and precedents in the case of Mann v. People, supra, the only precedents of which I am aware which decides the question involved. For that reason, I express my concurrence in the conclusion reached in the opinion of Judge HAWKINS, filed herein, to which reference is made.

LATTIMORE, JUDGE (dissenting).—The unusual features of this case, and a desire to correctly decide same, have caused the members of this court to take time and pains in considering the questions raised. The integrity of commercial and official documents is a matter of grave concern. After extended investigation of authorities seemingly pertinent, an opinion of affirmance was handed down here. Judge HAWKINS was ill and absent at the time. The case fell to him on rehearing, and after review he concluded that it should be reversed on its facts. Judge Morrow agreed to this, but in a concurring opinion brought into consultation expressed the opinion that a plea of former acquittal to which a demurrer had been sustained, should have been submitted to the jury. In view of

the fact that if the opinion of Judge HAWKINS becomes the law of this case, it will be finally settled, I see no need for discussing the questions relating to said plea of autrefois acquit.

With respect and affection for my associates, I regard their reasoning, including their deductions from the authorities and statutes, as unwarranted, and the main case relied upon by them,—Mann v. People, 15 Hun., 155, a New York case, decided about 1875,—as resting upon a statute so different from ours, and announcing a conclusion so at variance with our own decisions as well as later and better decisions of the courts of other states, as not to afford good ground for their judgment of reversal.

Under elementary authorities almost without number, and statutory definitions all over the country, forgery is defined as the making with fraudulent intent of a false instrument in writing which if genuine would be of legal efficacy for the apparent purpose intended. Ruling Case Law, vol. 12, p. 139; 26 Corpus Juris, p. 897; 19 Cyc., p. 1373, and authorities cited in each. If in this state we operated under the above definition, need for this discussion would be obviated, and this case would have been affirmed, but our article 979, P. C., defining forgery adds to the above that the instrument in writing involved must "Purport to be the act of another." True, this is followed by article 986, P. C., defining what is meant by "Instrument in writing" as used in our forgery statute; and also by article 989, P. C., defining what is meant by the word "another" when used in such regard.

In this connection we observe that article 8, P. C., states that words used in our statutes shall be understood as we use them in common language, except they be specially defined, in which case they shall be given such special definition though contrary to their usual meaning. Both definitions, i. e., that in article 986, supra, and the one in article 988, supra, become of the utmost importance in correctly deciding this case.

If I understand what my associates have written, they admit that appellant was county clerk of Uvalde County, Texas, and that he presented to the county treasurer an instrument in writing, a copy of which appears in our original opinion, being in form a warrant drawn on said treasurer, to which warrant appellant had affixed his official designation "J. W. Graham, County Clerk, Uvalde County, Texas," and which was attested by the seal of said county. Also that relying upon same as a genuine document said treaeurer paid to appellant the sum of $500 to which he was not entitled.

There can be no contention but that he could not have gotten such money upon said document had it been signed by his own name alone. The point of disagreement between the members of our court is,—did the written instrument involved "purport to be the act of another?" I affirm; my associates deny.

The word "purport," according to Webster's International Dictionary, means "To intend to show; to signify; to mean; to intend." Inserting this meaning in the definition of "Instrument in writing," as urged in article 986, supra, and as applied to our facts here, the question becomes,—what did the instrument so signed by the county clerk of Uvalde county and attested by the seal, *"intend to show,"* to the county treasurer? What did it *"Signify"* to him? What, if genuine, would it *mean* to any person dealing with it? Clearly the document was intended to show, to signify and mean that it was a warrant declaring the will and intention of a public official whose attestation in his official capacity gave to the document an apparent authority looked to and relied upon by said treasurer, and this is true wholly without regard to whether such signature was placed thereon by the county clerk in person or by a deputy. Further considering article 986, supra, and at the risk of repeating,—can there be any question as to whose will and intention such warrant purports to make known, to declare and signify? No one for a moment would answer,—that of J. W. Graham as an individual. Such answer would be worse than foolish. The will and intention of the man Graham declared in a document presented to the county treasurer, would not and legally could not move a dollar out of the treasury, but the will and intention of the public official Graham, properly attested, could empty such treasury.

That a man and an office are two separate and legal entities is plain and has been many times so held. Allen v. Beebe, 63 N. J. Law, 337, 43 Atl., 681. A county is a person. Lancaster County v. Trimble, 34 Neb., 752, 52 N. W., 711. So is the state. Article 980, P. C.; Martin v. State, 24 Texas, 62. A public office has an existence apart from that of any particular incumbent, and continues its existence without an incumbent. Childs v. State, 4 Okla. Cr., 474, 113 Pac., 545, 33 L. R. A. (N. S.) 563. An office carries with it the idea of tenure, duration, emoluments and duties, each of which attaches to the officer only while such, but to the office continually. If one be prosecuted for some malfeasance in office, the individual is convicted for misuse of a power and authority which belong to the office. Plainly while such official, he could do as he willed with his own property, person or private name, but not so with his official name or acts affecting his duties to the public. If convicted the individual would enter prison doors, but the office would remain and be undisturbed.

Evidently having these elementary truths in mind, our Legislature, after having added to the ordinary definition of forgery the further element that the instrument in writing must "purport to be the act of another," proceeded to define an instrument in writing and to give to the word "Another" a definition which we must keep in mind and must make effective even though "contrary to its usual meaning."

Article 988, P. C., which contains this special definition of the word "Another" when used in forgery cases in this state, is not found in the statutes of New York, which clearly differentiates the case of Mann v. People, supra. Said article in effect says that if the alleged forged document to be the act of the state; any branch of the government; a court, or a public official in his official capacity, it will purport to be the act of another. No argument is needed to make plain that the state can not commit forgery, nor can a court, corporation or public official in an official capacity, and it is also equally plain that those individuals who are authorized to act for the state, courts, corporations, etc., can commit forgery. Such individuals cannot act for the state, courts, or public officials by signing their own names alone, nor except they execute them under circumstances making such signature appear to be that of the state, court, public official, etc. Nor is it believed that persons can commit forgery by signing the names of others by themselves as agents, save in those cases comprehended,—with evident intention,—by article 988, supra; but when the instrument is so executed as to make it appear to be the act of a public official in his official capacity, etc.; we must give effect to article 8, P. C., and must bow to the statutory command and agree that it purports to be the of another, because this is a forgery case, —regardless of what me might say in other connections or situations. This is what my associates call legerdemain, but it is not;—it is simply the law as written by the Legislature.

I do not think a man can sign his official name to a document having money for its object, and attest it by the seal of his office with the apparent intent that such instrument shall be accepted and relied upon by not only the official to whom directed but also by the public generally,—and escape the conclusion that such act purports to be that of the officer as distinguished from the act of the individual.

Attention is called to the cases of Edwards v. State, 53 Texas Crim. Rep., 50, 108 S. W., 673, 674, 126 Am. St. Rep., 767; and Peel v. State, 35 Texas Crim. Rep., 308, 33 S. W., 541, 60 Am. St. Rep., 49. We held in those cases that a man can commit forgery by signing his own name to a document. In neither of the cases mentioned did the instrument purport on its face to be the act of any other save the accused. In the Edwards case this court said: "One who signs his name to an instrument, though it be identical with the name of another, is guilty of forgery, if the intent be to have it received as the instrument of such other person, and the instrument may be of legal efficacy."

Without affecting the principle involved, we can apply to the facts of the instant case the above statement as follows: Graham may have signed his own name to a warrant, though same be a part of the designation of the county clerk of Uvalde county, still he is guilty of forgery if his intent was to have such warrant received and relied upon as the

act and warrant of the county clerk of said county. Peel's case, supra, showed on its face that appellant got T. J. Peel of Hays county to sign an appearance bond, which appellant intended to use as a bond signed by T. J. Peel of Montgomery county. The appellant in that case was present when the bond referred to was so signed. Notwithstanding the genuine signature thereto by Peel of Hays county, this court held that appellant was guilty of forgery as a principal because at the time he had the bond signed he intended to use it as the signature of a person other than the man who actually signed it. In neither of those cases did the instrument on its face purport to be the act of another, and neither derives the assistance from article 988, supra, in arriving at who is meant by "another," as does the case at bar,—yet this court held that because the accused intended that the instrument should mislead and defraud another or others into dependence upon it as the act of "another" whose signature would add solvency to the document, the accused was guilty of forgery.

In State v. Wheeler, 20 Ore., 192, 25 P., 394, 10 L. R. A., 779, 23 Am. St. Rep., 119, the court says: "If this intent thus to personate another exists, the instrument is still a forgery, even if the name affixed is actually the same name as that borne by the party who signs it." In Commonwealth v. Foster, 114 Mass., 311, 319, 19 Am. Rep., 353, the court said: "If there be simulation, or any device in or upon the instrument itself, adopted to make it appear to be the note of such other party, so that the falsity and its proof are both borne upon it, no one would doubt that the charge of forgery might be maintained, notwithstanding that the signature is of a name which might lawfully be used by the person who attached it to the note."

This is very apt in the case before us where the use of the county seal and the official name of the county clerk were undoubtedly "devices in or upon the instrument" used to lead the treasurer to accept the warrant as the genuine act of a public official importing verity. In People v. Rushing, 130 Cal., 449, 62 P., 742, 743, 80 Am. St. Rep., 141, the court said: "A man may be guilty of forgery by making a false deed or instrument in his own name, if the name was placed upon the instrument with the fraudulent intent of throwing the onus of the obligation upon another, and of making the writing purport to be the writing of another. A man who forges another's name cannot excuse himself upon the ground that the name happened to be identical with his own."

In People v. Filkin, 83 App. Div., 589, 82 N. Y. S., 15, it appeared that Filkin who had held the office of town clerk, after the expiration of his term of office, affixed his own name as town clerk to what purported to be an official certificate. The court said: "It is charged and proven by evidence that in betrayal of his trust he sought to make the

public office conferred upon him, the means of robbing the public which trusted him. * * * The official character of the signature was the important element of the certificate in this respect, and in employing same it was not important whether he gave to such officer his own name, or that of another." Again how similar. In the case before us here there is not the slightest doubt that the official character of the signature was the important element in the fraud perpetrated by the appellant. Nor would the fact that Filkin's term of office had expired make the case mentioned less applicable to the question under discussion. He signed his own name, and to every intent, as far as its purport was concerned,—the document appeared to be *his signature,* just as in the instant case.

Luttrell v. State, 85 Tenn., 232, 1 S. W., 886, 4 Am. St. Rep., 760, was referred to in the original opinion herein, and holds that one may be guilty of forgery who signed his own name to an official document. In Com. v. Wilson, 89 Ky., 157, 12 S. W., 264, 265, 11 Ky. Law Rep., 375, 25 Am. St. Rep., 528, the Kentucky Court of Appeals said: "In Bishop's Criminal Law (vol. 2, sec. 585), it is said that, 'plainly, the broad doctrine is not maintainable that it is incompetent for a man to commit forgery of an instrument executed by himself.' And if it be forgery in the case referred to, where the deed was executed by the accused person, it clearly must be so regarded in this case. For not only was the plat and certificate, as charged, fraudulent, but, though made by the accused in person, purported to be not his individual, but official, act as surveyor, wherein the writing was false and deceptive, and whereby only would it have possessed legal efficacy if genuine and authentic. It seems to us, therefore, adopting and applying a reasonable and practical definition of the crime, the facts stated in the indictment constitute the offense of forgery; for the writing, as charged, was made with intent to defraud, was calculated to induce another to give credit to it as genuine, and if it had been so would have entitled Engle to a patent, and was made in the name of the accused in his official capacity, which was to a reasonable intent and of the same effect as if he had made it in the name of another surveyor."

Attention is called to the emphasis laid by said court on the fact that not only was the certificate signed by the accused, but also that it was signed by him in his official capacity: "Wherein the writing was false and deceptive, and *whereby only would it have possessed legal efficacy if* genuine and authentic." Note also the statement in the quotation that being made in his official capacity, this was to a reasonable intent and of the same effect as if he had made it in the name of another surveyor,— which is the exact point of my contention in the instant case. This case is cited with approval in Moore v. Com., 92 Ky., 630, 18 S. W., 833, 13 Ky. Law Rep., 738, wherein appears the following: "It is therefore urged the request of the accused to direct the jury to find him not guilty

should have been granted, upon the ground that there was a fatal variance between the charge in the indictment and the evidence. In other words, that he was charged with making the paper without authority, while the evidence showed he was authorized to sign the clerk's name to it, but that it was false. He had no authority, however, to make a false certificate. It could not have been conferred. Although he was authorized to sign the clerk's name to witness certificates, yet, if he did so to a false one, made out by him, it was forgery. It, says Blackstone, is 'the fraudulent making or alteration of a writing to the prejudice of another man's rights.' 4 Cooley, Bl. Comm., 247. Another leading writer says it is 'the false making, or materially altering with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability.' 1 Bish. Crim. Law, sec. 572. The clerk himself would be liable to the charge of forging a false witness certificate, although signed by him, if it were in fact false. It purports to be an obligation upon the State. If genuine, it evidences an indebtedness upon its part. One may be guilty of the false making of an instrument, although signed and executed in his own name, if it be false in a material part, but calculated to induce another to give credit to it as genuine. 1 Hale, P. C., 683. In the case of Com. v. Wilson, 89 Ky., 157, 12 S. W., 264 [11 Ky. Law Rep., 375, 25 Am. St. Rep., 528], it was so decided. It was there held that a county surveyor, who, with intent to defraud the state, made a plat and certificate of a survey purporting to have been made by him, when in fact none had been made, was guilty of forgery."

Note the statement that the clerk of the court would be liable to the charge of forging a false witness certificate, although signed by him, if it were in fact false; that it purports to be *an obligation upon the state.* If genuine it evidences an indebtedness upon its part, the very contention made by the writer in the instant case. Again the same court in Com. v. Davis, 196 Ky., 13, 244 S. W., 62, says: "While it is true a public official may be guilty of forgery by signing his own name to an instrument calculated to induce another to give credit to it as genuine and authentic, when in fact it is false and deceptive (Com. v. Wilson, 89 Ky., 157, 12 S. W., 264, 11 Ky. Law Rep., 375, 25 Am. St. Rep., 528), yet such an instrument must be fraudulently executed and must on its face appear to be possessed of legal efficacy, and such as will deceive persons into believing the same to be genuine and authentic."

These authorities seem sound to the writer and to announce what ought to be and is the law applicable to the instant case.

It being an undisputed fact that this appellant with necessary knowledge that his own name alone had no legal efficacy to induce delivery to him by the county treasurer of the county's money, intending to injure and defraud said county and to induce the treasurer of same to accept and rely upon a written instrument which, if true, was an obligation of

the county, signed thereto the name in official capacity, attested by the seal, of a public official in his official capacity, which false instrument was accepted by the treasurer and paid, when in truth no such warrant had been authorized, but the document was false.

Noticing some things said in the majority opinion, it is there observed that the act of this appellant is like to a case in which one signs another's name by himself as agent, as in Simms v. State, 116 Texas Crim. Rep., 97, 32 S. W. (2d) 852, opinion by the writer. If our statutory definition of "Another" as applied to forgery in article 988, supra, had included the signing without authority of the name of a natural person by another as agent, the opinion in the Simms case, supra, would not have been written. Therein lies all the difference.

It is also observed in the majority opinion that the written instrument in this case on which the alleged forgery was predicated, was as if appellant had written a letter to the county treasurer advising him that the commissioners court had allowed appellant's account for $511.65,—and had signed such letter officially. There would seem small need for demonstrating the fallacy of such argument, or to make plain the proposition that such letter would have brought forth no money from the treasury any more than that one from the sheriff addressed to a party who had bid in property at a sheriff's sale informing such person that the property had been struck off to him and was now his, would convey title. As well say that judges need but write notices to parties litigant that their cases have been decided certain ways, and claim this to be a sufficient judgment. There can be no serious contention of this kind. Nor do I see any soundness in the argument in the opinion of the majority that if the indictment had contained a purport clause alleging that the document purported to be the act of the commissioners court, there would have at once appeared a repugnance between the purport and tenor clauses. The document in this case neither by its tenor as set forth in the indictment, nor by its purport, claimed to be other than the act of the county clerk of Uvalde county, and it might be here said if there be need for a purport clause in a forgery indictment,—this one should have alleged that the document purported to be the act of the county clerk, for beyond question it was intended by appellant to so show, was accepted by the treasurer as so showing, and did in fact so show.

The majority opinion asserts that by no sort of legerdemain can the signature of an officer in his official capacity, be said to be the act of the individual independent of the official capacity in which he assumes to act. It seems to me that it would do as well to say, in the face of the decisions above referred to, that it is judicial legerdemain,—no matter how overwhelming the proof thereof be,—for the courts to say that when a man signs his own name, intending that reliance shall be had on it as that of another, he is guilty of forgery, to-wit, making an instrnment

purporting to be the act of another, yet this is what we said in Edwards and Peel cases, supra. In either case it becomes necessary to go behind the face of the instrument to bring to light the intent, and what the maker meant the document to show, and this is exactly my contention.

When a man acts in his official capacity, in law he may be one person,—when in his individual capacity, he is another. With all the emphasis with which I am capable, I insist that this officially signed warrant neither purports to be, nor is it, the act of the individual, but of another, but in reason and as a result of the pronouncement of article 988, supra.

As supposedly illustrative, my associates say that A, a notary public, can not take his own acknowledgment and justify any claim that there are two different persons. I confess difficulty in seeing any application. No claim is made in this case that Graham as county clerk could not legally draw a warrant properly attested payable to him as an individual. There is no question of forgery in the supposed case of the notary public referred to by my associates, hence no possible application thereto of article 988, supra. As a matter of logic, the use of an illustration of this kind in the majority opinion, strongly supports my proposition, that my associates are trying to work out by reasoning of their own a conclusion at variance with and ignoring the statutory demands of article 988, supra, when the law says that the ordinary meaning of words and terms shall not be adhered to when by statute a meaning wholly contrary is commanded in certain usage. If the statute commanded that in taking acknowledments the official act of the magistrate should be in law the act of another, we would have a different question and one which, if we obeyed the statutory mandate, we would have to uphold though contrary to the illustration used by my associates.

As stated above, the majority opinion relies upon the authority mainly of Mann v. People, 15 Hun., 155, and I again call attention to the fact that there is in New York no statutory definition of what it meant in forgery cases by the word "another." The alleged forged document in the Mann's case, supra, is set out in the opinion written by Judge HAWKINS, and appears to be vastly different from the document appearing in the instant case, still, as stated in the opinion of the New York court,—counsel for the people contended that the document purported to be the act of Saratoga county. It was not signed by the county, nor attested by the seal of said county, and is treated throughout in the opinion of the New York court as of the same effect as if a private person had signed to the document the name of another individual person, by the accused as agent. That there is direct conflict between the announcement in the Mann case, supra, and those of Edwards v. State, 53 Texas Crim. Rep., 50, 108 S. W., 673, and Peel v. State, 35 Texas Crim. Rep., 308, 33 S. W., 541, 60 Am. St. Rep., 49, is apparent upon

inspection of the latter part of the quotation from the Mann case appearing in the opinion of the majority, wherein it is said: "The instrument in question purported to be the act of Henry A. Mann. It may be that it purported to be legally binding on the county of Saratoga. But the act,—that is, the doing the physical act as distinct from the legal effect—wast the act of the prisoner."

In the two cases by our own court, just referred to, there can be and is no question but that the writing,—"The physical act as distinct from the legal effect,—was the act of the prisoner," to use the language of the Mann case, yet in each of those cases we correctly held that since it was the intent of the accused that the name signed by the prisoner should be taken to signify that it was the act of another, then such prisoner was guilty of forgery. So, also, if we look to the opinion in the Mann case as reported in 75 N. Y., 486, 31 Am. Rep., 482, also quoted and found in the majority opinion, we note that in the opinion of said court it is said: "One who makes an instrument signed with his own name, * * * does not make an instrument purporting to be the act of another. The instrument *shows upon its face* that it is made by himself and is in point of fact his own act."

Compare this with Judge Hurt's statement in Peel's case, 35 Texas Crim. Rep., 309, 33 S. W., 541, 60 Am. St. Rep., 49, in effect that if appellant was present when T. J. Peel of Hays county signed his own name to an appearance bond, knowing that appellant was going to hand it to the clerk of the district court of Travis county as having been signed by another T. J. Peel, appellant was guilty of forgery. Compare the above statement in the Mann's case with what we said in Edwards v. State, 53 Texas Crim. Rep., 50, 108 S. W., 673, 674, 126 Am. St. Rep., 767, as follows: "One who signs his own name to an instrument, though it be identical with the name of another, is guilty of forgery, if the intent be to have it received as the instrument of such other person, and the instrument may be of legal efficacy." We can not follow the announcement in either of the opinions in the Mann cases, supra, and follow the opinions of our own court as above set out. The opinion in the Mann case in 15 Hun., 155, as quoted in the opinion of the majority, proceeds: "There is undoubtedly a sense, as urged by the counsel for the people, in which such an instrument may be said to purport to be the act of the county. But that is a statement of the legal effect."

Since, in the very nature of things, it is inevitable that states, the United States, the several branches of government, all public bodies, politic and corporate, all courts, all public officers in their official capacities, etc., all of which are specifically defined as included in the meaning of "another" in article 988, supra,—must have their deeds, documents, orders and judgments attested and verified by some human being, before they can import validity or verity,—surely it would follow that if we

adhere to what is said in the Mann case, supra, then he who is sought to be charged with forgery of such public documents, deeds, etc., would of necessity have to be charged with forgery of the attesting or verifying name of some human being, because the whole official, judicial or governmental signature must depend upon and be accepted as the act of such official, judge, or branch of government only when properly attested by some natural person; and it seems to me an inevitable conclusion that this official "another" would be such but in legal effect, for the supposed official name of the court, state, government, etc., could have no such significance as "another" save it be given to it by express legal enactment.

Prevention of just such construction seems well within the probable intent of the enactment of said article 988, supra, giving to the word "another" a special definition to fit such case.

To give this effect to such enactment may be legal legerdemain, but what can we do save to try to ascertain the purpose of the Legislature and give it application. Unless and until we get away from our ordinary understanding of what is meant by the use of the word "Another" in forgery cases,—article 988, supra, is merely a vain thing, without effect, and we may say that in the absence of such definition as appears in article 988, supra, we would understand, as the New York court understood in its announcement in the Mann case, that "Another" would refer to and mean only a natural man. But when we look away from our ordinary understanding of said word because commanded so to do by statute, the wisdom as well as righteousness of such enactment appears. The man who falsely signs to a document the official name necessary to give validity thereto, ought to be punished for such false signing, no matter whose individual name he uses in such attestation. His whole intent being to defraud, every reasonable construction necessary to bring to justice such offender, ought to be indulged. Nothing seems to the writer to be sounder or more consonant with reason that results from recognition, under our definition of "Another," of the fact that the official name of one who has been invested with an office, is not his own property, and may not be signed by him or his deputies to false documents officially, without incurring the pains and penalties of the law of forgery visited upon him who thus signs.

The time required for this investigation seems worth while. If the majority opinion be adhered to, then this prosecution is finally over. If I have vindicated the soundness of my views, I am satisfied.

I respectfully enter my dissent.