**COMMONWEALTH of Kentucky, Appellant,**

v.

**Donald C. SCHUMACHER, Appellee.**

Court of Appeals of Kentucky.

Jan. 13, 1978.

Rehearing Denied June 16, 1978.

David L. Armstrong, Commonwealth's Atty., by Steven B. Strepey, Asst. Commonwealth's Atty., 30th Judicial Dist. of Kentucky, Louisville, for appellant.

Edwin E. Schottenstein, McCrea & Schottenstein, Louisville, for appellee.

Before COOPER, HAYES and HOWERTON, JJ.

HAYES, Judge.

This appeal is from an order of the Jefferson Circuit Court, dismissing an indictment against the defendant-appellee, Donald C. Schumacher, for violations of KRS 516.040, third degree forgery. The appellant, Commonwealth of Kentucky, urges this court to reverse the lower court because Schumacher's alleged illegal activity did constitute the crime of forgery in the third degree, whereas the appellee Schumacher argues this appeal should fail because the Commonwealth has not complied with the mandatory provisions of KRS 22A.020(4), which requires the Attorney General of this Commonwealth to participate in the appellate process in a criminal case. We shall consider the appellee's position first.

Chapter 22A of the Kentucky Revised Statutes deals with the present Court of Appeals and, more particularly, KRS 22A.020 deals with appellate procedures.

KRS 22A.020(4)(b) states:

An appeal may be taken to the Court of Appeals by the state in criminal cases from an adverse decision or ruling of the circuit court, but only under the following conditions: . . .

(b) Such appeal shall be taken in the manner provided by the Rules of Criminal Procedure and the Rules of the Supreme Court, except that the record on appeal shall be transmitted by the clerk of the circuit court to the *attorney general*; and if the *attorney general* is satisfied that review by the Court of Appeals is important to the correct and uniform

administration of the law, he may deliver the record to the clerk of the Court of Appeals within the time prescribed by the above-mentioned rules. (Emphasis added.)

There is nothing in this record that would indicate the Attorney General was or was not satisfied that review was required. There is no indication that the Attorney General's Office has ever received this case prior to the appeal. The appellant has not seen fit to file a reply brief on this issue.

■ If KRS 22A.020 is unconstitutional, then the Commonwealth would not have to be concerned with the opinion or assistance of the Attorney General in the appellate process. In the case of *Commonwealth of Kentucky v. Shobe*, Ky.App., 24 Ky.L. Summ. 11 (Aug. 5, 1977), we suggested that KRS 22A.020(4) might be unconstitutional. Today, we so hold for the following reasons.

■ Section 109 of the Kentucky Constitution, inter alia, vests the judicial powers of this Commonwealth exclusively in one Court of Justice headed by a Supreme Court. Under Section 116 of the Constitution the Supreme Court only has the power to prescribe rules governing appellate procedure and jurisdiction for the entire Court of Justice. The only restriction on appeal by the Commonwealth set forth by the Constitution of Kentucky, as stated in Section 115, is that the Commonwealth may not appeal from a judgment of acquittal in a criminal case for any purpose other than securing a certification of the law. Therefore, when the legislature, by enactment of KRS 22A.020(4), attempts to establish rules of appellate procedure, it is contrary to the dictates of the Constitution.

Previous to the enactment of the Kentucky Criminal Rules of Procedure we had the Criminal Code of Practice which was in existence at the time of *Commonwealth v. Jennings*, Ky., 269 S.W.2d 285 (1954) cited by appellee as authority for dismissing this appeal.

The Criminal Code of Practice, § 337 stated:

If an appeal on behalf of the Commonwealth be desired, the Commonwealth's attorney shall pray the appeal during the term at which the decision is rendered, whereupon the clerk shall immediately make a transcript of the record and transmit the same to the attorney-general, or deliver the transcript to the Commonwealth's attorney, to be transmitted by him. If the attorney-general, on inspecting the record, be satisfied that error has been committed to the prejudice of the Commonwealth, upon which it is important to the correct and uniform administration of the criminal law that the Court of Appeals should decide, he may, by lodging the transcript in the clerk's office of the Court of Appeals, within sixty days after the decision, take the appeal.

■ If this was the rule of practice today, the Commonwealth's appeal would have to be dismissed. However, when we adopted the Criminal Rules of Procedure in 1962, we did not include § 337 of the Criminal Code of Practice. The legislature has attempted to rectify this by making Criminal Code § 337 for all practical purposes, a part of the statutory law of this Commonwealth. We believe this is not within the province of the legislature and is within the sole province of the Supreme Court of Kentucky. Therefore, that section of the Kentucky Revised Statutes, Chapter 22A, wherein the legislature of this Commonwealth has attempted to establish appellate procedure is unconstitutional.

■ We now turn to the second issue in this case, which must be decided—for if KRS 22A.020(4) is unconstitutional, and the Rules of Criminal Procedure, as they presently exist, do not incorporate Criminal Code of Practice § 337, then there is no authority existing presently that requires the Commonwealth Attorney to seek the approval or opinion of the Attorney General on appeals.

In order to discuss the issue of whether or not the facts of this case constitute forgery in the third degree, we will briefly state the necessary and important facts.

The indictment charged that Schumacher, Director of the School Food Service for the Jefferson County Board of Education, falsely made, completed, and/or altered a bid tabulation for milk and other dairy products with intent to defraud, deceive, or injure the Jefferson County Board of Education. The Commonwealth alleges that information given to the Board of Education, that J. W. Haywood and Sons would pick up empty plastic containers from milk sold to the school system and return a rebate of ⅒ of a cent each, was false, and that Schumacher, as a result, knew that the information in the bid tabulation would be false. He signed the tabulation and presented it to the Board of Education for approval. The purchasing department of the Board of Education, of which Schumacher was not a member, compiled the bid tabulation, and it was signed by Schumacher in his official capacity as Director of School Food Services.

KRS 516.040 reads as follows: "A person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument."

In contending that dismissal of the indictment was error, the appellant places great stress on the fact that, in its memorandum in support of the order dismissing, the trial court stated "that if the defendant is guilty of supplying false information *verbally,* the charge should be under KRS 523.100." (Emphasis added.) Appellant contends that the Commonwealth was prepared to offer evidence that appellee did furnish false and misleading information, both verbally *and in writing* to the purchasing department.

Appellee, on the other hand, draws the Court's attention to a letter to counsel for the Commonwealth, which sets out facts the parties allegedly agreed upon, including the statements that the tabulation was prepared without the aid of any known *written* memorandum from Schumacher, and that the basis for the charge consisted of *verbal* misrepresentations. The letter is not signed by counsel for the Commonwealth, nor is there any certification of service on counsel for the Commonwealth. Under such circumstances, it is questionable whether the statements can be considered approved by the Commonwealth, thereby making the statements in them stipulated fact.

However, it would not appear necessary to determine whether the circuit judge in fact relied in part on the belief that the misrepresentations were verbal in dismissing the complaint, or whether that belief was an erroneous one, not agreed to by the Commonwealth, since the Circuit Court's judgment can be upheld on other grounds cited by the court in its memorandum in support of its opinion.

As the penal code is quite new, we have no case decisions interpreting KRS 516.040 on this issue. However, the wording of the definitions of the three verbs used in the statute, as given in KRS 516.010, is quite enlightening:

(4) To "falsely alter" a written instrument means to change, without the authority of anyone entitled to grant it, a written instrument, whether it be in complete or incomplete form, by means of erasure, obliteration, deletion, insertion of new matter, transposition of matter, or in any other manner, so that such instrument in its thus altered form appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible maker or drawer.

(5) To "falsely complete" a written instrument means to transform by adding, inserting or changing matter, an incomplete written instrument into a complete one, without the authority of anyone entitled to grant it, so that the complete instrument appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible maker or drawer.

(6) To "falsely make" a written instrument means to make or draw a complete written instrument in its entirety or an incomplete written instrument, which purports to be an authentic creation of its ostensible maker or drawer, but which is not either because the ostensible maker

or drawer is fictitious or because, if real, he did not authorize the making or drawing thereof.

All of the foregoing sections speak of acts *without authority,* and of falsely making documents to appear *authentic* creations of their ostensible maker or drawer. Defendant in no way altered, made, or even completed the tabulation other than indicating his approval of it by signing his name, which was within his authority as Director of School Food Service. As to the authenticity of the bid tabulation, its ostensible maker was the Purchasing Department, and appellant admits in its brief that it was the Purchasing Department that prepared it. If appellee did in fact submit written information to the Purchasing Department, which it used in preparing the bid, it has not been alleged that he was not authorized to submit data, or that he submitted it in such a manner as to make it appear that the data came from someone other than himself.

Appellant cites *Moore v. Commonwealth,* 92 Ky. 630, 18 S.W. 833 (1892) as authority that one may be prosecuted and convicted of forgery even though he signed his own name, if by signing the instrument or document he knew it contained false information and his reason for so signing was to defraud or cheat another. The actual holding of *Moore* is somewhat narrower:

> It is therefore urged the request of the accused to direct the jury to find him not guilty should have been granted upon the ground that there was a fatal variance between the charge in the indictment and the evidence. In other words, that he was charged with making the paper without authority, while the evidence showed he was authorized to sign the clerk's name to it, but that it was false. He had no authority, however, to make a false certificate. It could not have been conferred. Although he was authorized to sign the clerk's name to witness certificates, yet, if he did so to a false one, made out by him, it was forgery. It, says Blackstone, is "the fraudulent making, or alteration of a writing to the prejudice of

another man's rights." Another leading writer says it is "the false making, or materially altering, with intent to defraud, or any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." . .

The clerk himself would be liable to the charge of forging a false witness certificate, although signed by him, if it were in fact false. It purports to be an obligation upon the State. If genuine, it evidences an indebtedness upon its part. One may be guilty of the false making of an instrument, although signed and executed in his own name, if it be false in a material part but calculated to induce another to give credit to it as genuine. . . .

*Moore* appears to deal with the making of a document which is authorized to be made only when a certain act takes place, i. e., when a witness attends court, which had not occurred. See also *Commonwealth v. Wilson,* 89 Ky. 157, 12 S.W. 264 (1889) in which a surveyor, who made a plat and certificate of a survey purporting to have been made by him, when in fact none had been made, was guilty of forgery. This case, while it does not specifically speak of lack of authority, might be similarly interpreted. For further discussion see 36 Am. Jur.2d *Forgery* § 6–7.

In the case before this Court, there was authority to prepare a bid tabulation, as bids had actually been made. It appears that, if appellant's allegations of fact are true, a criminal offense may have been committed by appellee, but that offense is not the crime of forgery. The trial court properly dismissed the indictment. The judgment is affirmed.

All concur.