Steven **MOORE**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

Douglas **Hawkins**, Appellant,

v.

**Commonwealth of Kentucky, Appellee.**

No. 2004–SC–0550–DG,
2004–SC–0552–DG.

Supreme Court of Kentucky.

May 18, 2006.

Rehearing Denied Sept. 21, 2006.

---

Margaret Foley Case, Appeals Branch Manager, Joseph Ray Myers, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant Steven Moore (2004–SC–0550–DG).

Gregory D. Stumbo, Attorney General, George G. Seelig, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, James C. Shackelford, Assistant Attorney General, Consumer Protection Division, Frankfort, Counsel for Appellee Commonwealth of Kentucky (2004–SC–0550–DG).

Dennis James Burke, Richard E. Neal, Department of Public Advocacy, Frankfort, Counsel for Appellant Douglas Hawkins (2004–SC–0552–DG).

Gregory D. Stumbo, Attorney General, Michael Harned, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee Commonwealth of Kentucky (2004–SC–0552–DG).

COOPER, Justice.

Because these two appeals present the same two principal issues in different factual contexts, we address them in a single opinion. The principal issues are whether an appellate court may permit a criminal defendant to file a belated appeal from the denial of a collateral attack against a conviction or sentence and, if so, under what circumstances it may do so. No. 2004–SC–0550–DG presents the additional issue of the effect of a mistaken notation on the clerk's docket with respect to the manner of service of notice of entry.

## I.  NO. 2004–SC–0550–DG.

On October 26, 1998, Steven Moore pled guilty in the Daviess Circuit Court to three counts of rape in the second degree, three counts of sodomy in the second degree, two counts of wanton endangerment in the first degree, and one count of escape in the second degree, for which he was sentenced to a total of ten years in prison. Final judgment was entered on December 4, 1998.

On December 5, 2001, Moore filed a *pro se* RCr 11.42 motion to vacate his pleas and sentences on grounds of ineffective assistance of counsel, alleging that at the time he entered his pleas he was under the influence of Melleril, a psychotropic medication, which rendered his pleas involuntary; and that, on advice of counsel, he lied to the trial court about having ingested any such medication. In addition to the RCr 11.42 motion, Moore filed a motion to proceed *in forma pauperis* and a motion for appointment of counsel. In an opinion and order entered on January 24, 2002, the trial court overruled all of the motions without an evidentiary hearing. Specifically, the trial court quoted Appellant's sworn testimony from the transcript of his *Boykin* hearing, *Boykin v. Alabama*, 395 U.S. 238, 240–41, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), that he had, indeed, ingested Melleril that morning but that his mind was clear. The trial court further noted that Appellant had filed his motion outside the three-year period of limitations prescribed by RCr 11.42(10).[1]

On May 2, 2002, Moore filed a notice of appeal from the order overruling his postconviction motions, as well as a designation of record, a motion to proceed *in forma pauperis* on appeal, and a motion for appointment of counsel. On May 13, 2002, the trial court granted the motion to proceed *in forma pauperis* and appointed the Department of Public Advocacy ("DPA") to represent Moore on appeal. On June 3, 2002, the Court of Appeals entered an order requiring Moore to show cause why his appeal should not be dismissed on grounds that it was not timely filed. RCr 12.04(3) (notice of appeal to be filed within 30 days after date of entry of judgment or

---

1.  Appellant did not allege any facts that might have caused an equitable tolling of the period of limitations. *See Robertson v. Commonwealth,* 177 S.W.3d 789 (Ky.2005).

order from which taken). Receiving no response to the show-cause order, the Court of Appeals dismissed the appeal on August 15, 2002. Moore filed a motion for reconsideration on August 26, 2002. CR 76.38(2). The motion was denied by an order of March 6, 2003, which also contained the notation: "This Court suggests that appellant file a motion for belated appeal."

On April 8, 2003, Moore filed a motion for belated appeal, stating that he "erroneously believed that an appeal was automatic from the denial of his 11.42 motion and that he did not understand until a later conversation with inmate legal aid, whereupon he immediately tendered a notice of appeal." On April 21, 2004, the Court of Appeals denied the motion for belated appeal on grounds that "appeals from collateral matters, such as motions for RCr 11.42 relief, do not fall within the criteria for belated appeals set out in *Commonwealth v. Wine*, Ky., 694 S.W.2d 689 (1985)." On June 18, 2004, the Court of Appeals overruled a motion to reconsider the April 21, 2004, order, citing *Merrick v. Commonwealth*, 132 S.W.3d 220 (Ky.App. 2004).

## II. NO. 2004–SC–0552–DG.

On September 4, 1997, a Wolfe Circuit Court jury convicted Appellant, Douglas Hawkins, of murder, for which he was sentenced to twenty years in prison. On June 17, 1999, this Court affirmed both his conviction and sentence. On August 1, 2001, Hawkins filed a *pro se* RCr 11.42 motion to vacate his judgment and sentence on grounds of ineffective assistance of counsel, and a motion for appointment of counsel and an evidentiary hearing. The trial court appointed the DPA to represent Hawkins and held an evidentiary hearing on the RCr 11.42 motion. On May 8, 2003, the trial court entered an opinion

and order overruling the RCr 11.42 motion. Hawkins directed his counsel to file an appeal from that order. On May 23, 2003, counsel attempted to file a notice of appeal by placing it in the United States mail, but mistakenly addressed the notice to the Breathitt Circuit Clerk instead of to the Wolfe Circuit Clerk. Before the mistake could be corrected, the time for filing the appeal had expired. On July 7, 2003, Hawkins filed a motion in the Court of Appeals for permission to file a belated appeal. On February 10, 2004, the Court of Appeals, as in No. 2004–SC–0550–DG, denied the motion on grounds that "appeals from collateral proceedings do not fall within the criteria for belated appeals set out in *Commonwealth v. Wine*, Ky., 694 S.W.2d 689 (1985)." On June 17, 2004, also as in No. 2004–SC–0550–DG, the Court of Appeals overruled Hawkins's motion for reconsideration, citing *Merrick v. Commonwealth*, 132 S.W.3d 220 (Ky.App. 2004).

## III. CONSTITUTIONAL RIGHT TO COUNSEL AND APPEAL.

Although a state is not obliged to provide any appeal at all for persons convicted of criminal offenses, *McKane v. Durston*, 153 U.S. 684, 688, 14 S.Ct. 913, 915, 38 L.Ed. 867 (1894), if a state does provide for an appeal, it must afford the same rights to indigents as are afforded to other appellants, *Griffin v. Illinois*, 351 U.S. 12, 17, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956), including the right to counsel. *Douglas v. California*, 372 U.S. 353, 356, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963). In *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the U.S. Supreme Court held that the right to counsel on appeal includes the right to effective assistance of counsel. *Id.* at 396–97, 105 S.Ct. at 836–37 (affirming issuance of writ of habeas corpus in Kentucky case where the first appeal had been dismissed be-

cause of counsel's failure to file statement of appeal as then required by Ky. R.App. P. 1.090).

There is also no constitutional requirement that a state provide relief from conviction or sentence by way of collateral attack, *United States v. MacCollom*, 426 U.S. 317, 323, 96 S.Ct. 2086, 2090–91, 48 L.Ed.2d 666 (1976), though if a state does provide for such relief, it cannot deny a defendant full access to that relief, including the right to appeal, solely because the defendant is indigent. *Lane v. Brown*, 372 U.S. 477, 484–85, 83 S.Ct. 768, 773, 9 L.Ed.2d 892 (1963) (cost of transcripts to enable appeal from denial of writ of error *coram nobis*); *Smith v. Bennett*, 365 U.S. 708, 712–14, 81 S.Ct. 895, 897–98, 6 L.Ed.2d 39 (1961) (filing fee to file petition for writ of habeas corpus). However, both *Douglas* and *Evitts* pointed out that the constitutional right to counsel, and, concomitantly, to effective assistance of counsel, is limited to a first direct appeal from a judgment of conviction and not to discretionary appeals or appeals from collateral attacks. *Douglas*, 372 U.S. at 356–57, 83 S.Ct. at 816; *Evitts*, 469 U.S. at 396 n. 7, 105 S.Ct. at 836 n. 7. *See also Murray v. Giarratano*, 492 U.S. 1, 8, 109 S.Ct. 2765, 2769, 106 L.Ed.2d 1 (1989) (no constitutional right to counsel to pursue collateral attack); *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) (same); *Ross v. Moffitt*, 417 U.S. 600, 612, 94 S.Ct. 2437, 2445, 41 L.Ed.2d 341 (1974) (no constitutional right to counsel to pursue discretionary review or writ of certiorari). The articulated rationale behind the distinction between direct first appeals and discretionary appeals or appeals from collateral attacks is that by the time a criminal defendant files a motion for discretionary review or a collateral attack, the defendant will have a transcript or other record of

trial proceedings, access to briefs filed in the first appeal, and an opinion of an appellate court explaining the issues raised and decided on the first appeal. These materials, plus whatever submissions the movant provides *pro se*, will usually provide the court with a basis for ruling on the discretionary motion or collateral attack. *Ross*, 417 U.S. at 615, 94 S.Ct. at 2446.

The concepts of a belated appeal and/or a reinstated appeal arose in response to the U.S. Supreme Court's holdings in *Douglas* and *Evitts*. The issue then became how and where relief from a lost appeal due to ineffective assistance of counsel should be granted, *i.e.*, by motion in the court with appellate jurisdiction over the case or by a separate RCr 11.42 motion in the trial court?

In *Commonwealth v. Wine*, 694 S.W.2d 689 (Ky.1985), we undertook a comprehensive analysis of this issue, noting that our previous cases had "blown hot and cold on the subject." *Id.* at 692. *Wine's* matter-of-right appeal from a judgment of conviction had been dismissed because of appointed counsel's failure to timely file a brief. He then filed an RCr 11.42 motion to vacate the conviction and sentence and to enter a new judgment from which a new appeal might be prosecuted. This procedure had been approved in *Hammershoy v. Commonwealth*, 398 S.W.2d 883, 884 (Ky.1966), then seemingly disapproved in *Cleaver v. Commonwealth*, 569 S.W.2d 166, 169 (Ky.1978), and then reapproved in *Stahl v. Commonwealth*, 613 S.W.2d 617, 618 (Ky.1981). In *Wine*, we distinguished between a reinstatement of a dismissed appeal that had been timely filed and a belated appeal where a timely notice of appeal had never been filed. *Id.* at 693–94. Although *Wine* involved a reinstated appeal, the case essentially held that if the right to a first appeal is lost because of

ineffective assistance of counsel, whether because the notice of appeal was not timely filed or because the appeal was dismissed for, *e.g.,* counsel's failure to file a brief, then the appeal must be allowed or reinstated unless the client agreed to, condoned, or contributed to the dismissal.

> [I]t cannot be doubted that the failure of counsel to file a brief which results in the dismissal of an appeal constitutes ineffective assistance. *It is as if no appeal had been taken.* In such a case, the appeal must be reinstated unless the conduct has been condoned by, agreed to, *or is in some way attributable to* the client.

*Id.* at 695 (emphasis added). *Wine* also held that the appellate court with jurisdiction to hear the appeal was the only court with jurisdiction to grant a reinstated or belated appeal. *Id.* at 694.

In *Merrick v. Commonwealth,* 132 S.W.3d 220 (Ky.App.2004), the Court of Appeals held that *Wine* applied to an appeal from a denial of a motion to proceed on direct first appeal *in forma pauperis* and granted the appellant's *pro se* motion for a belated appeal from that denial. *See* CR 73.02(1)(b) (appeal from denial of motion must be filed within ten days); *Gabbard v. Lair,* 528 S.W.2d 675, 677–78 (Ky. 1975). However, it then digressed into *obiter dictum,* noting that "[i]t has come to the attention of the Court that there appears to be considerable confusion as to the proper scope to be accorded the belated appeal procedure outlined in the opinion of the Kentucky Supreme Court in *Commonwealth v. Wine,* Ky., 694 S.W.2d 689 (1985)," and used *Merrick* as a vehicle to address whether a belated appeal could be granted from the denial of relief in collateral proceedings, such as RCr 11.42 motions. *Merrick,* 132 S.W.3d at 220–21. After analyzing *Wine* and the United States Supreme Court cases discussed *su-*

*pra,* it concluded that there could be no belated appeal in such a case.

It thus becomes apparent that the bedrock of the belated appeal procedure delineated in *Wine* is the preservation of an indigent criminal defendant's right to the one appeal guaranteed in the Kentucky Constitution from loss occasioned by ineffective assistance provided by his counsel. In other words, the belated appeal procedure is available *only* in situations in which an appellant in a criminal case loses the direct appeal of his conviction through the denial of the effective assistance of counsel to which he is entitled as a matter of due process.

> ... [T]his strict application of the *Wine* criteria will result in the denial of belated appeal motions in collateral proceedings, such as in the context of motions for RCr 11.42 relief, appeals from probation revocation proceedings, motions to clarify sentence and the like....

*Id.* at 221.

## IV. STATUTORY RIGHT TO COUNSEL AND APPEAL

The flaw in *Merrick*'s reasoning was its failure to recognize that the reason *Wine* focused solely on constitutional issues was that it involved only the denial of a first appeal because of ineffective assistance of counsel, thus falling squarely within the constitutional parameters of *Douglas* and *Evitts. Wine* was not required to address whether the loss of a statutory right of appeal because of counsel error would justify granting a reinstated or belated appeal. KRS 22A.020(1) provides:

> Except as provided in Section 110 of the Constitution, an appeal may be taken as a matter of right to the Court of Appeals from any conviction, final judgment, *order,* or decree in any case in Circuit Court, ... unless such conviction, final judgment, order, or decree was ren-

dered on an appeal from a court inferior to Circuit Court.

(Emphasis added.) This statute was previously compiled at KRS 21.140(1) and, before that, codified at Section 334 of the Criminal Code of Practice. In *Commonwealth v. Schumacher*, 566 S.W.2d 762 (Ky.App.1978), the Court of Appeals held that the portion of KRS 22A.020(4) that requires the Attorney General's approval before a prosecutor can appeal a ruling of a circuit court to the Court of Appeals is unconstitutional as an infringement of the Kentucky Supreme Court's constitutional authority to prescribe rules governing practice and procedure in the Court of Justice. *Id.* at 764 (construing Ky. Const. § 116). However, in *Commonwealth v. Bailey*, 71 S.W.3d 73 (Ky.2002), we noted that the Judicial Amendment authorized the General Assembly to prescribe the appellate *jurisdiction* of the newly created Court of Appeals. *Id.* at 77; *see also* Ky. Const. § 111(2) ("In all other cases, [the Court of Appeals] shall exercise appellate jurisdiction as provided by law."). KRS 22A.020(1) purports to confer jurisdiction only upon the Court of Appeals, thus does not affect Section 116 ("The Supreme Court shall have the power to prescribe rules governing *its* appellate jurisdiction...." (Emphasis added.)). Thus, in addition to the constitutional right to *"at least* one appeal to another court," Ky. Const. § 115 (emphasis added), the General Assembly has created a statutory matter-of-right appeal to the Court of Appeals from any order of a circuit court. *McIntosh v. Commonwealth*, 368 S.W.2d 331, 335 (Ky.1963) (construing former KRS 21.140(1)).

In *Commonwealth v. Stamps*, 672 S.W.2d 336 (Ky.1984), we recognized that RCr 11.42 creates a conditional right to counsel, and that KRS 31.110 authorizes appointment of counsel in such a proceeding if the person seeking relief is a "needy person." *Id.* at 339. Specifically, RCr 11.42(5) provides, *inter alia:*

> If the answer raises a material issue of fact that cannot be determined on the face of the record the court shall grant a prompt hearing and, if the movant is without counsel of record and if financially unable to employ counsel, shall upon specific written request by the movant appoint counsel to represent the movant in the proceeding, *including appeal.*

(Emphasis added.) KRS 31.110 provides, *inter alia:*

> (1) A needy person who is being detained by a law enforcement officer ... is entitled:
>
> (a) To be represented by an attorney to the same extent as a person having his own counsel is so entitled; ....
>
> ....
>
> (2) A needy person who is entitled to be represented by an attorney under subsection (1) of this section is entitled:
>
> ....
>
> (c) *To be represented in any other post-conviction ... proceeding* that the attorney and the needy person considers [sic] appropriate. However, if the counsel appointed in such post-conviction ... remedy, *with the court involved,* determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense, there shall be no further right to be represented by counsel under the provisions of this chapter.

(Emphasis added.) We construed these two provisions together in *Fraser v. Commonwealth*, 59 S.W.3d 448 (Ky.2001), and concluded that "RCr 11.42(5) establishes

when a judge *must* appoint counsel for an indigent movant and that KRS 31.110(2)(c) establishes when the DPA *may* provide legal services even without judicial appointment." *Id.* at 456 (overruling *Commonwealth v. Ivey,* 599 S.W.2d 456, 457 (Ky.1980), insofar as it held that a judge was required to appoint counsel in an RCr 11.42 proceeding "upon request" regardless of the stage of the proceedings). Finally, KRS 31.219(1) provides:

> It shall be the duty of the attorney representing a client under any public advocacy plan to perfect an appeal if his client requests an appeal.

We do not regard the statutory right to counsel and to an appeal to be a "useless formality." *Cullins v. Crouse,* 348 F.2d 887, 889 (10th Cir.1965). "For this court to recognize that an indigent has a statutory right to counsel, but then refuse to require some modicum of competency by such counsel, seems repugnant to the obvious legislative intent." *Brown v. State,* 278 Kan. 481, 101 P.3d 1201, 1203 (2004) (quoting *McCarty v. State,* 32 Kan.App.2d 402, 83 P.3d 249, 253 (2004) (Greene, J., dissenting)). The specification of the authority and duties of the DPA in KRS 31.030 clearly anticipates that the representation provided to indigent defendants will be at least minimally competent. *See also* KRS 31.071(1)(b) ("In order to be qualified for appointment as [local] public advocate, a person must have been admitted to the practice of law and licensed to practice in the Commonwealth of Kentucky *and be competent to counsel and defend a person charged with a crime.*" (Emphasis added.)).

■ Our holding in this regard should not be construed as sanctioning the filing of a subsequent RCr 11.42 motion for the purpose of claiming ineffective assistance of counsel in litigating a previous RCr 11.42 motion. Such potentially intermina-

ble post-conviction proceedings would certainly "bring our judicial system to its knees." *Wine,* 694 S.W.2d at 694. However, when incompetence of counsel, especially state-appointed counsel, costs an indigent defendant a statutory right of appeal, that defendant ought to be entitled at least to a reinstated or belated appeal. *See Whitney v. State,* 334 Ark. 581, 976 S.W.2d 391, 392 (1998) (granting belated appeal from denial of post-conviction relief where attorney admitted fault in failing to timely file notice of appeal); *Rosado v. State,* 864 So.2d 533, 534 (Fla. Dist.Ct.App.2004) (granting belated appeal where indigent defendant requested that attorney appeal from order denying post-conviction relief and attorney refused because defendant did not forward filing fee, which indigents were not required to pay); *Brown,* 101 P.3d at 1203–04 (granting belated appeal from order denying post-conviction relief where appointed counsel failed to notify defendant of his appointment, of the date of the evidentiary hearing, of the denial of the motion, and of the right to appeal); *Austin v. State,* 305 S.C. 453, 409 S.E.2d 395, 396 (1991) (remanding for an evidentiary hearing to determine whether defendant requested and was denied an opportunity to seek appellate review of order denying post-conviction relief). Thus, we reject the *dictum* in *Merrick,* 132 S.W.3d at 221, that suggests that a reinstated or belated appeal is never available except in a direct first appeal of a judgment of conviction.

■ Whether denominated "ineffective assistance" or "incompetence," filing a notice of appeal in the wrong court and thereby costing an indigent defendant the statutory right of appeal is undoubtedly inadequate legal representation that warrants the granting of a belated appeal in this case. As in *Rosado,* 864 So.2d at 533,

there is no need to remand No. 2004–SC–0552–DG for an evidentiary hearing with respect to whether Hawkins condoned, agreed to, or in some way contributed to the loss of his right to appeal. *Wine,* 694 S.W.2d at 695. The Commonwealth does not suggest that Hawkins did not request that the attempted appeal be filed; and, obviously, the notice of appeal would have been timely filed if counsel had simply mailed it to the correct circuit court. Thus, we reverse the Court of Appeals and remand No. 2004–SC–0552–DG to that Court with instructions to grant Hawkins's motion for belated appeal.

■ However, application of the principles set forth herein and in *Fraser* requires a different result in No. 2004–SC–0550–DG. As explained, *supra,* Appellant Moore did not have a constitutional right to counsel or effective assistance of counsel in prosecuting his RCr 11.42 motion or in appealing the denial thereof. Nor was he entitled to appointment of counsel under RCr 11.42(5), because the allegations in his motion could be determined on the face of the record without an evidentiary hearing. *Fraser,* 59 S.W.3d at 452–53; *cf. Stamps,* 672 S.W.2d at 339 (any error assignable under *Ivey* was harmless because transcript of *Boykin* hearing clearly refuted allegations contained in RCr 11.42 motion). Although KRS 22A.020(1) created a statutory right of appeal, the provisions of KRS 31.110(2)(c) and KRS 31.219(1) do not apply to Moore because the trial court did not appoint the DPA to represent him. Thus, though he was entitled to appeal, it was his obligation to exercise that right by taking the action he finally took on May 2, 2002, more than two months too late. Obviously, he contributed to his own failure to timely file a notice of appeal. Thus, the Court of Appeals properly denied his motion for a belated appeal. *Wine,* 694 S.W.2d at 695.

## V. INCORRECT NOTATION OF MANNER OF SERVICE OF NOTICE OF ENTRY.

By motion, Appellant Moore raises a secondary issue pertaining to the effect of an apparent error on the Daviess Circuit Clerk's criminal docket with respect to the manner in which notice of entry of the order denying RCr 11.42 relief was served on Moore. The trial court directed that copies of the order be sent to the Commonwealth's Attorney and to "Steven Moore, Jr., Luther Luckett Correctional Complex, Post Office Box 6, LaGrange, Kentucky 40031."

The Circuit Clerk's criminal docket sheet reflects that the trial court's order denying RCr 11.42 relief was entered on January 24, 2002. The next entry, entered on the same date, states "NOE [Notice of Entry] TO ALL COUNSEL OF REC [Record] Method HAND DELIVERY." Since Moore was not represented by counsel and was, in fact, incarcerated at Luther Luckett Correctional Complex on January 24, 2002, it is highly likely that the notation reflecting the manner of service of notice of entry was incorrect. Moore did not discover the incorrect entry until after we had granted discretionary review of the Court of Appeals' denial of his motion for a belated appeal. He then filed a motion requesting that the erroneous entry be declared no entry, with the effect that the time for appeal from the January 24, 2002, order has not yet begun to run and will not do so until the error is corrected. We passed that issue to the merits of the case, perceiving that if we ultimately held that Moore was entitled to a belated appeal (the only issue for which we granted discretionary review in this case), such would render moot the issue regarding the incorrect docket entry. Having determined that Moore was not entitled to a belated

appeal, we now address this secondary issue. The effect of a mistaken notation on the clerk's docket with respect to the manner of service of notice of entry is governed by RCr 12.04(3) and RCr 12.06(1) and (2):[2]

Rule 12.04. When and how taken.

. . . .

(3) The time within which an appeal may be taken shall be thirty (30) days after the date of entry of the judgment or order from which it is taken, *subject to Rule 12.06* . . . .

Rule 12.06. Notice of entry of judgments and orders.

(1) Immediately upon the entry in the trial court of a judgment, a final order, or an order that affects the running of time for taking an appeal, the clerk shall serve a written notice of the entry, either by mail or by personal delivery, upon counsel of record for each defendant, affected by the judgment or order, or upon the defendant personally if the defendant is without counsel of record . . . .

(2) The clerk shall make a note in the criminal docket of the service required by paragraph (1) of this Rule, which notation *shall show the date and manner of service.* Unless notice has been waived, *the date of such notation shall be the date of entry for purposes of Rule 12.04(3)* . . . .

(Emphasis added.)

We note at the outset that Moore does not claim that he did not receive proper notice of entry of the order of January 24, 2002. Nor does he claim that the notice of entry was not mailed to him at his prison address as required by the order, itself. In fact, in his motion to the Court of Appeals for permission to file a belated appeal, he made no claim that he did not timely receive the notice of entry of the judgment from the circuit clerk—only that he mistakenly believed the appeal was automatic and that he did not learn otherwise until talking with an inmate legal aid months later.

Appellant's reliance on *Ramey v. Commonwealth,* 824 S.W.2d 851 (Ky.1992), is misplaced. In *Ramey,* the circuit clerk noted *on the judgment* that notice of entry was served by mailing a true copy to the defendant's counsel of record on January 28, 1985. However, the clerk did not make such a notation *on the criminal docket* until November 4, 1988, two weeks after this Court denied Ramey's motion to file a belated appeal. Ramey then filed his appeal on November 14, 1988. *Id.* at 852. We held that the appeal was timely filed because the time for appeal did not run until the clerk made the notation on the criminal docket. "[W]e conclude straightaway that the beginning of the ten [now thirty]-day period is the date of the clerk's notation in the criminal docket of the service required by RCr 12.06(1)." *Id.* at 853. *Ramey* also held that *actual notice* by the defendant of the entry of the judgment was immaterial; "the controlling event in defining the time in which a notice of appeal may be filed is the notation by the clerk in the docket, made in compliance with RCr 12.06(2), as to service of notice of the entry of judgment." *Id.* at 854.

In *Ramey,* there was no notation either of the date of service or the manner of service; thus, there was no entry on the criminal docket from which to calculate the time for appeal. Here, both the date of

---

**2.** Since this is not a direct appeal from a judgment entered pursuant to a plea of guilty, RCr 12.06(3) does not apply.

service and the manner of service were noted on the criminal docket—albeit the notation as to the manner of service was incorrect. Nevertheless, there was an entry as required by RCr 12.06(2), and Appellant does not deny that he was served with proper notice of the date the judgment was entered. Under these circumstances, we regard the incorrect notation as to manner of service as a clerical mistake under RCr 10.10, correctable (if need be) *nunc pro tunc. Cardwell v. Commonwealth,* 12 S.W.3d 672, 674 (Ky.2000). Regardless, this type of error does not toll the time for filing an appeal absent a claim and proof that the defendant did not receive the notice of date of entry required by RCr 12.06(2).

Accordingly, we affirm No. 2004–SC–0550–DG, and we reverse No. 2004–SC–0552–DG and remand the latter case to the Court of Appeals with directions to grant Hawkins a belated appeal from the denial of his RCr 11.42 motion.

LAMBERT, C.J.; GRAVES, SCOTT, and WINTERSHEIMER, JJ., concur.

ROACH, J., concurs in part and dissents in part by separate opinion, with JOHNSTONE, J., joining that opinion.

ROACH, Justice, concurring in part and dissenting in part.

Because this is the first time since Kentucky courts have operated under the modern civil and criminal rules that any appellate court of this Commonwealth has ignored the mandatory time-limitation contained in our rules governing appeals absent overriding requirements stemming from federal constitutional law, I dissent.

Appeals of post-conviction proceedings, such as those pursuant to RCr 11.42, are taken pursuant to RCr 12.04, which provides that "[t]he time within which an appeal may be taken shall be thirty (30) days

after the date of entry of the judgment or order from which it is taken...." RCr 12.04(3). (CR 73.02 applies the same time limit to civil appeals.) The Criminal Rules do not impose a sanction for tardy filing of an appeal. Instead, sanctions are imposed by the Civil Rules. The Civil Rules are applicable to criminal matters unless contrary to or superceded by the Criminal Rules. RCr 13.04. Though we have specific appellate rules in the Criminal Rules, RCr 12.02 specifically provides that "Civil Rule[ ] ... 73.02(2)(c) ... shall apply also in criminal actions...." CR 73.02(2)(c) includes a sanction for failure to follow the rules generally and a more specific sanction, which actually applies to all the subsections of CR 73.02, for when an appeal is filed outside the prescribed time limit. The latter sanction is our concern here: "The failure of a party to file timely a notice of appeal, cross-appeal, or motion for discretionary review *shall* result in a dismissal or denial." CR 73.02(2) (emphasis added).

Outside a single, narrow exception, the courts of Kentucky have understood that the "shall" in CR 73.02(2) means *shall,* and therefore requires strict compliance with the time limit for invoking appellate jurisdiction. In 1954, Kentucky's highest court stated in regard to the 30–day time limit for taking an appeal under CR 73.02 that "we are without authority to annul this requirement or to extend the time for meeting it beyond the limits fixed in the Rule." *Electric Plant Bd. of City of Hopkinsville v. Stephens,* 273 S.W.2d 817, 819 (Ky.1954). Since this first interpretation of the time limitations for appeals, our appellate courts have repeatedly held that absent a requirement found in federal constitutional law, the time limits for taking appeals in our rules are mandatory. *See Johnson v. Smith,* 885 S.W.2d 944, 949–50 (Ky.1994) (holding that "the battle be-

tween strict compliance with the rules of appellate practice to avoid dismissal and substantial compliance is now over" and that tardy appeals are subject only to strict compliance); *Workers' Compensation Bd. v. Siler,* 840 S.W.2d 812, 813 (Ky.1992) ("Our adoption of the substantial compliance rule provides that the failure of a party to timely complete some procedural steps may not affect the validity of the appeal. However, filing of the Notice of Appeal within the prescribed time frame is still considered mandatory, and failure to do so is fatal to the action." (citations omitted)); *Cobb v. Carpenter,* 553 S.W.2d 290, 293 (Ky.App.1977) (citing to *Stephens* and holding that the 30–day time limit is mandatory); *Demoss v. Commonwealth,* 765 S.W.2d 30, 32 (Ky.App.1989) (holding that RCr 12.04(3) time limit is mandatory and that an "appellate court cannot grant an appeal whenever it chooses to do so, in disregard of the rules of procedure"); *Commonwealth v. Opell,* 3 S.W.3d 747, 751 (Ky.App.1999) ("Filing a notice of appeal within the prescribed time frame is still mandatory and failure to do so is fatal to an appeal." (citation and internal quotation marks omitted)). As this Court recently stated:

> [O]ur holding today, that a tardy notice of appeal is subject to automatic dismissal and cannot be saved through application of the doctrine of substantial compliance, is a policy decision that is reflected in CR 73.02. This policy choice is necessary to preserve the finality of judgments.

*Excel Energy, Inc. v. Commonwealth Institutional Securities, Inc.,* 37 S.W.3d 713, 716–17 (Ky.2000) (citation omitted). It seems beyond debate then that automatic dismissal is mandated by our rules. If the time limits are not met, the appeal should automatically be dismissed.

The majority attempts to evade the mandatory effect of our rule—in essence, rewriting the rule—by seizing on and expanding the lone exception found in *Commonwealth v. Wine,* 694 S.W.2d 689 (Ky. 1985). The majority opinion states that *Wine* "essentially held that if the right to a first appeal is lost because of ineffective assistance of counsel, whether because the notice of appeal was not timely filed or because the appeal was dismissed for, *e.g.,* counsel's failure to file a brief, then the appeal must be allowed or reinstated unless the client agreed to, condoned, or contributed to the dismissal." Ante at 136–37.

I agree with this understanding of *Wine* as it applies to first appeals. However, a review of *Wine*'s reasoning indicates that it should be limited to first appeals. After several extensions of time to file the appellant's brief, counsel for the appellant was denied a final extension by the Court of Appeals, and the appeal was dismissed. *Wine,* 694 S.W.2d at 691–92. In an attempt to restart the running of time for the appeal, the appellant filed an RCr 11.42 motion, which we held was only "designed to permit a trial court an opportunity after entry of judgment to review its judgment and sentence for constitutional invalidity of the proceedings prior to judgment or in the sentence and judgment itself" and therefore was "not an appropriate remedy for a frustrated appeal." Id. at 694.

Nonetheless, we allowed the appellant to pursue his tardy appeal. In doing so, we noted:

> Our courts are compelled to abide by the decisions of the United States Supreme Court which has held in unmistakable terms that when a state authorizes an appeal from a conviction in a criminal case, it cannot deny an appeal to an indigent. *Griffin v. Illinois,* 351 U.S.

12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), held that, in a first appeal, an indigent appellant in a criminal case must be supplied with an attorney, and *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), held that due process requires an appellant in a criminal case to be provided with effective assistance of counsel. In *Evitts v. Lucey,* the United States Supreme Court noted that states may enforce procedural rules in a criminal case with sanctions against an attorney rather than dismissing the appeal of the client.

*Id.* at 695. From this, we concluded:

It seems abundantly clear from the decisions of the United States Supreme Court that State rules of procedure, however important they may be to the orderly administration of justice, cannot be allowed to frustrate an appeal of an indigent defendant who has been denied effective assistance of counsel.

Although the law is still developing as to what constitutes ineffective assistance of counsel in the constitutional senses, it cannot be doubted that the failure of counsel to file an appellate brief which results in the dismissal of an appeal constitutes ineffective assistance. It is as if no appeal had been taken. In such a case, the appeal must be reinstated unless the conduct of counsel has been condoned by, agreed to, or is in some way attributable to the client.

*Id.* at 695.

However, *Wine* did not rely on any state ground in its holding. It simply held that state procedural rules must give way when federal constitutional rights would otherwise be violated. Though not stated in *Wine,* this is due to the fact that most of the federal protections found in the Bill of Rights are also applicable to state governments under the Fourteenth Amendment. The problem in applying *Wine,* however, as even the majority opinion concedes, is that no federal constitutional rights are involved in the present matter. The United States Supreme Court has previously addressed the right to counsel in the context of state post-conviction proceeding, holding that "[t]here is no constitutional right to an attorney in state post-conviction proceedings." *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). The Court further noted that there was no federal right to counsel on appeal of such a proceeding: "Given that a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review, it would defy logic for us to hold that Coleman had a right to counsel to appeal a state collateral determination of his claims of trial error." *Id.* at 756–57, 111 S.Ct. at 2568. Rather than concede that the reasoning in *Wine* was necessarily narrow, the majority claims it was decided on such narrow grounds only because it was presented with a narrow issue, implying, of course, that had the issue we now face been presented, the majority's reasoning would have prevailed then. As the majority opinion claims:

[T]he reason *Wine* focused solely on constitutional issues was that it involved only the denial of a first appeal because of ineffective assistance of counsel, thus falling squarely within the constitutional parameters of *Douglas* and *Evitts.* *Wine* was not required to address whether the loss of a statutory right of appeal because of counsel error would justify granting a reinstated or belated appeal.

Ante at 137. But the majority's reasoning and subsequent approach to the rule does not flow logically from *Wine.*

Though the majority fails to state its thesis explicitly, its opinion appears to combine a statutory right to appeal with what it describes as a statutory right to counsel so as to allow certain defendants to proceed with tardy appeals of a circuit court's determination of an RCr 11.42 motion. While the statutory right to appeal is clearly defined, *see* KRS 22A.020(1), the majority's characterization of the statutory right to counsel, specifically how it leads to a right to effective assistance of counsel on par with the constitutional right of counsel that applies to direct appeals, is problematic.

The majority derives the statutory right to effective assistance of counsel from the convergence of one of our criminal rules and the statutes related to the Department of Public Advocacy (DPA). Specifically, the majority cites to RCr 11.42(5) and KRS 31.110(2)(c). We have previously concluded "that RCr 11.42(5) establishes when a judge *must* appoint counsel for an indigent movant and that KRS 31.110(2)(c) establishes when the DPA *may* provide legal services even without judicial appointment." *Fraser v. Commonwealth,* 59 S.W.3d 448, 456 (Ky.2001). The rule and statute, taken together, create what the majority calls a "statutory right to counsel."

The majority cites to several other states that have held that statutory rights to counsel gives rise to a right of effective counsel in post-conviction proceedings, then relies on several of the DPA statutes—KRS 31.030, which defines the general duties and authority of the DPA; 31.071(1)(b), which requires an attorney to be competent in order to work for the DPA; and KRS 31.219, which specifies that a DPA attorney has a duty to perfect a client's appeal—to inject the right of effective counsel into Kentucky's statutory right to counsel. As the majority notes,

"[t]he specification of the authority and duties of the DPA ... clearly anticipates that the representation provided to indigent defendants will be at least minimally competent." Ante at 139.

While I do not disagree with this characterization of the DPA's duties, I simply cannot subscribe to the majority's jigsaw puzzle approach to effective assistance of counsel in post-conviction matters. To begin with, this statutory right to counsel is conditional and incomplete. RCr 11.42 requires that counsel be appointed only in certain circumstances. And KRS 31.110(2)(c) limits the entitlement to "proceeding[s] that the attorney and the needy person considers appropriate" and terminates the entitlement when, "with the court involved, [counsel] determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense...." The inevitable result, as was the case with one of the defendants here (Steven Moore), is that counsel often is not appointed by the court, the DPA does not intervene, and the defendant is forced to proceed pro se.

Though the majority discusses the statutory right to counsel as a source of the right of effective assistance of counsel, the discussion appears to be mere window-dressing. The majority does not describe how it arrives at this extended right from the bare statutory right to counsel in a post-conviction matter. It does cite to cases from a few other states that have held that their statutory right to counsel also includes a right of effective counsel. But this is not enough, especially when that so-called right is then used to override a long-standing and stringent requirement for invoking appellate jurisdiction. In fact, since the question before us is not whether a defendant was denied appointed counsel, the statutory right to counsel discussion is not especially important, unless there is

some element in the majority's reasoning that it chose not to include in its opinion. Ultimately, in terms of Kentucky law, the majority relies only on those statutes defining the DPA attorneys' duties to their clients to arrive at the statutory effective assistance right.

It is this reliance on the DPA-duty statutes as the source of a right of effective post-conviction counsel, however, that is most troubling. First, I disagree that those statutes create such rights for defendants. The DPA is a creature of wholly statutory origin. KRS 31.010. Those statutes defining the authority and duties of the DPA's attorneys, e.g., KRS 31.030, are simply part of the description of the DPA's mandate—they govern the creation, maintenance, and internal operation of the DPA. Those statutes do not give rise to corollary rights in the clients of those attorneys employed by the DPA in order to carry out its statutory mandate.

Even more troubling, however, is the fact that if legal rules defining the duties of an attorney to a client are alone enough to create this right of effective assistance in post-conviction proceedings, then all defendants who have attorneys must enjoy that same right. Our Rules of Professional Conduct require that all members of the Bar provide competent representation. See SCR 3.130–1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."); SCR 3.130–1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."). These rules bind all members of the Bar, meaning that all attorneys owe a duty of competent representation to their client. If the majority's logic is sound, then this duty entails a corollary right of effective assistance—one enjoyed by all clients,

public and private. The majority even implies this to be the case when it applies its derived principles of effective assistance to Hawkins's tardy appeal: "[W]hen incompetence of counsel, especially state-appointed counsel, costs an indigent defendant a statutory right of appeal, that defendant ought to be entitled at least to a reinstated or belated appeal." Ante at 139. This language, while emphasizing appointed counsel, does nothing to limit this approach to DPA attorney representation.

But this exposes the difficulty in allowing a defendant to pursue a tardy appeal of a post-conviction matter due to ineffective assistance of counsel. It leads to the bizarre result that only pro se defendants may not pursue tardy appeals of post-conviction matters, despite our policy to allow pro se litigants greater leniency and to hold them to a lesser standard than attorneys. See *Million v. Raymer*, 139 S.W.3d 914, 920 (Ky.2004) ("This Court has many times held that when a prisoner elects to proceed pro se, he is not subject to the same standard of pleading as is legal counsel; and that rules are to be construed liberally in his favor." (internal quotation marks and citation omitted)); *Miller v. Commonwealth*, 458 S.W.2d 453, 454 (Ky.1970) ("Where the prisoner is proceeding pro se, as here, we do not impose on him the same standards as those applied to legal counsel." (internal punctuation and citation omitted)); *Moore v. Commonwealth*, 394 S.W.2d 931, 932–33 (Ky. 1965) ("[W]e are not disposed to be too strict in application of procedural rules to an indigent prisoner who is without counsel."). If pro se defendants are to be denied tardy appeals, then surely those defendants who enjoy the counsel of an attorney enjoy no greater rights.

But allowing an attorney's duty to provide competent counsel during post-convic-

tion proceedings to create a right of effective assistance of counsel would lead to an even more absurd result: the effective evisceration of our rules concerning the time to file an appeal. Under the majority's logic, since all attorneys owe their clients a duty of competent representation, and such a duty gives rise to a right of effective representation, any matter of right appeal lost due to incompetence or ineffectiveness of counsel must be reinstated. If this is so, then why have we repeatedly applied the rule of strict compliance to the time in which to pursue an appeal? The answer is simple—because our rules require it: "The failure of a party to file timely a notice of appeal, cross-appeal, or motion for discretionary review shall result in a dismissal or denial." CR 73.02(2). Strict compliance, as we have held in *Johnson, Excel Energy, Inc.*, and numerous other cases, is the policy embodied in CR 73.02(2). It admits only one sanction: dismissal of the appeal. Thus our discussion comes full circle.

The majority attempts to cobble together disparate rules and statutes to create a post conviction state-law analog to the first-appeal federal rights in *Wine*. But in doing so, it does such violence to our rules requiring timely appeals so as to defeat them. Today, contrary to *Johnson* and every other case we have ever decided, we are allowing the description of the duties of the DPA to trump our own previously absolute rules of procedure. In so doing, this Court has made clear that none of our rules concerning appeals can be enforced. If the right of appeal in KRS 22A.020(1) and the duty of DPA counsel to be competent together trump our unequivocal time limits, how can any of our procedural rules concerning appeals stand in the way of that right? And why should a civil litigant not be entitled to the same rights that we are giving these criminal defendants in this matter? After all, they too have a

right to appeal under KRS 22A.020(1), and their attorneys are required to be competent. Truly, such a consistent application of the holding of this case would "bring our judicial system to its knees." Our jurisprudence, despite the advent of substantial compliance, has consistently upheld our rules related to the timeliness of appeals. We should continue to do so. Our rules require strict compliance—nothing less— unless federal law requires otherwise.

Because I do not believe that we should overrule scores of cases and that we should enforce our rules as written, with their requirement of strict compliance, I respectfully dissent from the reversal of Hawkin's conviction. I do agree with the majority's conclusion that pro se defendants are subject to the requirement of strict compliance with the time limit for filing an appeal, thus I concur in the majority opinion insofar as it affirms Moore's conviction.

JOHNSTONE, J., joins this opinion, concurring in part and dissenting in part.