RENDERED: APRIL 23, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

### 2024-SC-0423-MR

PAUL JONES                                                APPELLANT

V.                      ON APPEAL FROM BATH CIRCUIT COURT
HONORABLE DAVID A. BARBER, JUDGE
NO. 21-CR-00062

COMMONWEALTH OF KENTUCKY                               APPELLEE

### OPINION OF THE COURT BY JUSTICE CONLEY

### REVERSING AND REMANDING

Appellant, Paul Jones, appeals as a matter of right[1] from a Bath Circuit Court judgment convicting him of first-degree trafficking in a controlled substance, first offense, and of being a first-degree persistent felony offender. He argues that the Commonwealth committed misconduct during his cross-examination and closing argument by violating the rule set out in *Moss v. Commonwealth*, 949 S.W.2d 579 (Ky. 1997), and that the trial court's amendment of his sentence from ten years to twenty was improper. The Commonwealth argues that no reversible *Moss* violation occurred and that the amended sentence was permissible, but also argues, at the threshold, that Jones's conviction-related claim is untimely.

---

[1] KY CONST. §110(2)(b).

We hold that Jones's appeal is properly before this Court; that the Commonwealth's cross-examination of Jones violated *Moss*; and that, in the particular circumstances of this trial, the resulting misconduct was palpable and requires a new trial. Because we reverse Jones's conviction and remand for a new trial, we do not decide the parties' dispute concerning the later resentencing proceedings.

## I. Facts and Procedural History

The Commonwealth's proof centered on a controlled buy conducted through confidential informant Brian Wilson. Police searched Wilson before and after the buy, observed him enter Jones's residence, and recovered methamphetamine after he emerged. The police did not, however, observe what occurred inside the residence. The trial record alludes to an audio recording device fitted to Wilson, and to an audio recording that was apparently inconclusive. The Commonwealth did not play any such recording for the jury or seek to enter the same into evidence. Jones testified that Wilson did not buy drugs from him at all, but instead interacted with a woman who was present there. Thus, although some parts of the Commonwealth's proof were not disputed, the core factual dispute concerned what happened during the period Wilson was inside the residence and, more specifically, who sold him the methamphetamine.

The defense theory was correspondingly clear. From opening statement forward, the defense attacked Wilson's credibility and sought to show that the case depended on whether the jury believed him. Evidence was presented,

through the testimony of the leading officer on the case (Officer Southerland) as well as through that of Wilson himself, that Wilson had been stopped for DUI while on probation for drug trafficking; that an apparent controlled substance was found in his vehicle; that no charge was brought in connection with that substance; that the substance was never tested; that Wilson offered to help police gather evidence against Jones in response to this arrest; and that Wilson worked with police only in this case. The defense also elicited agreement from Officer Southerland on cross-examination that police were relying on Wilson's account for what occurred during the unobserved interval inside the residence.

Jones testified in his own defense. The prosecutor's cross-examination of Jones was brief. As the video record reflects, it lasted only about five minutes and consisted of roughly ten substantial questions. Nearly all of those questions were directed at the same point: attacking Jones's credibility and neutralizing his effort to portray Wilson as the witness whose trustworthiness the case depended upon. Within that short examination, the prosecutor asked three questions that are the focus of this appeal: (1) after referencing Wilson's testimony that he had purchased narcotics from Jones before, the Commonwealth asked, "So he just made that up?"; (2) after establishing that Jones used methamphetamine and denied selling methamphetamine to Wilson, the Commonwealth asked, "You just happened to have methamphetamine, use methamphetamine, and then Mr. Wilson is not telling the truth?"; and (3) after reciting Wilson's admissions that he was a felon, had received a DUI, and had

3

purchased narcotics from Jones, the Commonwealth asked, "But your testimony today is that that's not accurate?"

Defense counsel did not object to these questions. The jury convicted Jones. It recommended a five-year sentence on the trafficking conviction, later enhanced to twenty years by the PFO finding. On June 6, 2024, the circuit court orally pronounced a ten-year sentence and entered a signed docket entry reflecting five years enhanced to ten years. The court later reopened sentencing, held a further hearing, and stated that the ten-year sentence had been based on mistaken information found in the pre-sentence investigation report. It then entered an amended AOC-450 judgment on August 19, 2024 imposing a twenty-year sentence. Jones filed his notice of appeal from that August judgment.

## II. Jones's appeal of his conviction is properly before this Court.

The Commonwealth first contends that Jones's challenge to his conviction must be dismissed as untimely. Its argument is that if the June 6, 2024 docket entry was a final judgment, as Jones himself would have it when pressing his argument on the re-sentencing issue, then Jones had to file a notice of appeal within thirty days of that entry. Because Jones instead appealed from the later August 19 judgment that followed the amended sentence, the Commonwealth says the only timely appealed matter is the later sentence, not the conviction-related *Moss* claim.

We are not persuaded.

4

A defendant has 30 days to file an appeal from a final judgment of conviction. Ky. R. App. P. (RAP) 3(A)(1). The final judgment includes the sentencing decision by the court. Ky. R. Crim. P. (RCr) 11.04. However, this case does not present the ordinary situation in which a trial court enters judgment, the case becomes fixed, and a party simply declines or otherwise fails to appeal. After the June 6 sentencing proceeding, the circuit court signed an order on June 14 placing the case back on the docket "to correct Defendant's sentence on the record." That order was entered June 17. A further sentencing hearing was then held in August, and the circuit court later entered the amended AOC-450 judgment sentencing Jones to twenty years on August 19, 2024. In other words, while the time to file an appeal from a final judgment is thirty days, only eleven days had passed since the June 6 sentencing proceeding when Jones received notice that the trial court *sua sponte* was claiming to reopen the matter. At that point, Jones waited for that re-hearing and its result, and then timely filed his notice of appeal, including his arguments regarding the conviction itself and the re-sentencing together in the one appeal.

The Commonwealth seems to contend that Jones should have appealed the **conviction** within thirty days of the June 6 entry, while waiting to see what would happen regarding the **sentence** at a rehearing that was still in the future, and then filed a separate appeal to the re-sentencing. First, this is incorrect on the merits, as we will discuss shortly. But even if the Commonwealth were correct that this is what should have been done,

5

dismissal of the appeal would still be unwarranted. When counsel's negligence costs an indigent defendant his statutory right of appeal, the proper remedy is "at least" a reinstated or belated appeal. *Moore v. Commonwealth*, 199 S.W.3d 132, 139 (Ky. 2006). Jones has consistently sought appellate review, and his reply brief expressly requests the functional equivalent of belated-appeal relief in the alternative. Under these circumstances, we would decline to mandate the empty formality of dismissing this appeal only to permit the same case to return through a separate belated-appeal procedure.

Turning to the merits, however, in this procedural posture, Jones's appeal was not untimely. We decline to hold that Jones forfeited (non-belated) appellate review of his conviction by failing to file a separate merits appeal while the trial court itself had reopened sentencing and was actively conducting further proceedings.

Our holding is narrow. We do not hold that every later amended criminal judgment restarts the time for appeal. Nor do we decide whether the June 6 docket entry constituted a final judgment for all purposes implicated by the parties' resentencing dispute. It is enough to say that, where the trial court reopened sentencing within the thirty-day period for filing a notice of appeal, conducted a later sentencing hearing, and then entered the judgment from which the defendant appealed, a timely appeal from that later judgment may proceed against both the conviction and the re-sentencing that caused the delay.

**III. The Commonwealth's cross-examination of Jones violated *Moss*.**

Kentucky law has long prohibited forcing one witness to characterize another witness's testimony as a lie or otherwise to opine directly on another witness's truthfulness. *See Moss*, 949 S.W.2d at 583; *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010); *Barrett v. Commonwealth*, 677 S.W.3d 326, 340–41 (Ky. 2023). The reason is plain. Such questioning invades the jury's role as the sole judge of credibility and unfairly places the witness in a position where his own testimony is made to appear crude, hostile, or unbelievable simply because he rejects another witness's account. The *Moss* prohibition exists "to prevent a witness from being presented in an unflattering light from which he could not recover in the eyes of the jury." *Luna v. Commonwealth*, 460 S.W.3d 851, 880 (Ky. 2015).

The Commonwealth argues that no *Moss* violation occurred because Jones's testimony already implied that Wilson was lying, and the prosecutor was only verbalizing that implication. But factfinders have to sort through mutually-exclusive stories all the time. It is the charge of the litigants to provide evidence to persuade the finder of fact that their version of the underlying events is the correct one. The jury may infer that there is a contradiction -- i.e. "if X is correct then Y must be incorrect" -- but *Moss* forbids compelling the witness to assert the contradiction directly. That a defendant's theory necessarily implies that another witness is mistaken or untruthful does not authorize the prosecutor to compel the defendant to adopt the formulation that *Moss* forbids.

Notably, even the cases the Commonwealth cites for its argument that the questions were not even *Moss* violations, such as *Newman v. Commonwealth*, 366 S.W.3d 435, 451 (Ky. 2012), and *Parker v. Commonwealth*, 482 S.W.3d 394 (Ky. 2016), do not state that no *Moss* violation occurred. This Court in *Newman* found that there was no palpable error in part because of the nature of the defendant's defense, but the questions in that case were still *Moss* violations. *Newman*, 366 S.W.3d at 442. And in *Parker*, we held that a proposed distinction between being mistaken and lying did not need to be analyzed, because even if *Moss* violations occurred, they would not have been palpable under the conditions of that case. *Parker*, 482 at 442. Multiple questions in this case pertained to accusing the witness of lying, not merely of being mistaken, and so the distinction briefly considered in *Parker* remains of no use here.

Turning to the particular questions challenged in the appeal, the first two challenged questions were direct *Moss* violations. After asking Jones whether he had heard Wilson testify that he had bought narcotics from Jones before, the prosecutor asked, "So he just made that up?" Later, after eliciting that Jones used methamphetamine and denied selling methamphetamine to Wilson, the prosecutor asked, "You just happened to have methamphetamine, use methamphetamine, and then Mr. Wilson is not telling the truth?" Those questions did not merely illuminate a discrepancy in testimony, or contrast two irreconcilable accounts. They required Jones to answer in precisely the forbidden liar-or-truth-teller format. The first question demanded that Jones

8

say Wilson "made that up." The second demanded that Jones say Wilson was "not telling the truth." Both violate *Moss*.

The third question, viewed in isolation, is closer: after reciting Wilson's admissions that he was a felon, had gotten a DUI, and had purchased narcotics from Jones, the prosecutor asked, "But your testimony today is that that's not accurate?" Standing alone, that question might be characterized as a mere restatement of conflicting evidence, or as an assertion that the other witness was merely "mistaken" rather than lying (if this Court were of a mind to draw such a distinction when it comes to *Moss* violations, as was requested in *Parker*). But it did not occur in isolation. It came after the two earlier liar-or-truth-teller questions and was part of the same short, concentrated cross-examination. In context, it served the same function. It again forced Jones to reject Wilson's account in the prosecutor's preferred framing rather than simply allowing the jury to compare the two witnesses' testimony for itself.

**IV. In the circumstances of this trial, the misconduct was palpable.**

Because the issue is unpreserved, Jones is entitled to relief only if the error was palpable under RCr 10.26. A palpable error is one that results in manifest injustice. In the context of prosecutorial misconduct, the question is whether the misconduct was so improper, prejudicial, and outcome-significant that there is a substantial possibility the result would have been different absent the error. See *Brafman v. Commonwealth*, 612 S.W.3d 850 (Ky. 2020). There are four factors a court must consider when determining whether the misconduct rises to this level: (1) whether the misconduct tended to mislead

9

the jury or prejudice the accused; (2) whether it was isolated or extensive; (3) whether it was deliberate or accidental; and (4) the strength of the evidence against the accused. *Id.*, at 861.

We have in multiple cases pointed out that unpreserved *Moss* violations have never yet been found to be palpable error. *See, e.g., Barrett* at 342; *Parker v. Commonwealth*, 482 S.W.3d 394, 406 (Ky. 2016). But these sorts of statements summarizing past findings are not a rule that no *Moss* violation **can** be palpable error. Indeed, how could that be? Palpable error is reviewed on a case-by-case basis; and if an error is real, then it might turn out to be palpable under the circumstances of a given case. *Moss* has long drawn a clear line that it is error for a prosecutor to force one witness to characterize another as lying or "not telling the truth." That line has not become unenforceable merely because palpable-error relief has previously been denied on the particular facts before this Court in other cases. To the contrary, the repeated need to identify *Moss* violations while withholding relief confirms only that the inquiry remains case-specific. *Meadows* does not hold otherwise.

We do not hold that every unpreserved *Moss* violation warrants reversal. Most do not; in fact as *Meadows* correctly pointed out, thus far no case on which we have ruled has.[2] But we also cannot understand *Moss* and its progeny to create a rule of practical impunity. If repeated liar-or-truth-teller

---

[2] Though it is an unpublished Court of Appeals opinion and not binding precedent per RAP 41(a), *Ceraulo v. Commonwealth*, No. 2023-CA-0625-MR, 2024 WL 4644782, at *4 (Ky. App. Nov. 1, 2024) demonstrates that Kentucky appellate courts do not treat palpable-error relief for unpreserved *Moss* errors as categorically unavailable.

questions aimed at the central credibility issue in a tightly contested trial could never amount to palpable error, then the rule announced in *Moss* is essentially toothless. We decline to treat it that way.

The Commonwealth proved that Wilson entered Jones's residence under surveillance and emerged with methamphetamine. But the Commonwealth did not prove who sold the methamphetamine to Wilson while he was inside, unless you believe Wilson's account (and discount Jones's). The Commonwealth's case against Jones depended on Wilson's account.

In these circumstances, we have struck upon a case in which *Moss* errors were palpable. This was not a case in which the improper questions touched only a collateral contradiction. Nor was it a case in which abundant independent proof rendered the witness-to-witness credibility dispute incidental. The case rested on Wilson. The defense developed multiple facts from which the jury could question Wilson's credibility: his DUI arrest, his probationary status, the apparent controlled substance found in his vehicle, the absence of charges concerning that substance, the lack of testing of that substance, and his one-shot role as a confidential informant who worked with police only in this case. On top of that, Officer Southerland admitted on cross-examination that police were relying on Wilson for the critical gap during the unobserved interval inside the residence. The defense did not merely assert that Wilson was untrustworthy. It gave the jury concrete reasons to scrutinize him.

That is why the Commonwealth's use of *Moss*-violating questions created a substantial possibility that the verdict was affected. When credibility is central, *Moss*-violating questions aimed at the defendant are live fodder for palpable error. By the time the Commonwealth reached its cross-examination of Jones — the last witness of the case — it had every reason to recognize that Jones's credibility attack on Wilson was the central obstacle to conviction. The case turned on the jury's assessment of credibility between these two witnesses regarding the unobserved event inside the residence.

In that moment, rather than simply exposing inconsistencies, making its best arguments as to why it had the better of the credibility issue during its closing statement, and letting the jury do its work, the prosecutor resorted to *Moss*-violating formulations to cast Jones's defense in an inaccurately negative light. This was manifestly unjust in this particular case because the inaccurately negative light was being cast on the central issue of the case.

In terms of the considerations required for a misconduct analysis in cases such as *Brafman*, all four factors weigh towards palpable error in this case. First, the improper questions prejudiced the accused. The questions went directly to the one point the jury most needed to assess independently: whether Wilson should be believed about the identity of the seller. By forcing Jones to characterize Wilson's testimony in liar-or-truth-teller terms, the prosecutor reshaped the conflict into a form that unfairly burdened Jones's defense. The jury was not simply invited to decide which witness was more credible. Jones was made to look as though his defense amounted to nothing more than

12

branding Wilson a liar to save his own skin. In reality there was substantial evidence to challenge Wilson's credibility without any testimony from Jones. The jury must decide that question of credibility, but it must be framed properly for them to do so. If credibility is the central issue in a case, then a *Moss* error is likely to be prejudicial, and it was in this case.

The circumstances also indicate that the improper questions were deliberate rather than accidental, and that they were not isolated or stray incidents. The brevity of the exchange does not cut against Jones in this case, but for him. In some cases, a short exchange suggests an isolated misstep. Here, the entire examination was short because it was focused. Three of the ten questions were *Moss* violations. The prosecutor used a meaningful fraction of a very brief cross-examination to hammer the precise forbidden theme. The concentration of the improper questioning underscores the centrality of the credibility battle, and the Commonwealth's deliberate focus on that issue. The *Moss* questions were neither isolated nor accidental.

Finally, the strength of the evidence also weighs in favor of finding the errors palpable. The evidence was sufficient to go to the jury, but sufficiency is not the point. The point is whether the Commonwealth's proof of the decisive disputed fact — who sold the methamphetamine inside the residence — was so strong that the improper questioning could not have mattered. It was not. As we have observed previously, "the witness who affirms, and the accused who denies, make an equal balance." *Masters v. Commonwealth*, 724 S.W.3d 751, 768 (Ky. 2025) (quoting V Tucker's *Blackstone* 357 (St. George Tucker ed., *The*

13

*Lawbook Exchange,* Ltd. 2011) (1803)).  The Commonwealth's only proof that it was Jones who sold the drugs in the otherwise unseen transaction was to offer a confidential informant to contradict Jones's denial, and then to attack Jones's credibility relative to that witness in part by asking Jones *Moss*-violating questions.

RCr 10.26 is case-specific. In this case, repeated *Moss*-violating questions during a short and highly concentrated cross-examination created a substantial possibility that the verdict was affected.[3] We therefore conclude that, in the specific factual context of this case, the misconduct was flagrant enough to amount to palpable error. Manifest injustice occurred.

## V. We do not reach the resentencing issue.

The appellant also argues that the circuit court lacked authority to increase his sentence from ten years to twenty years after the June 6 proceedings. Because we reverse Jones's conviction and remand for a new trial,

---

[3] Jones also points to the prosecutor's closing argument emphasizing that Wilson and the officers "had no reason to lie." We do not treat the closing argument as a separate, independent ground for reversal. But it is relevant to the prejudice and misconduct analysis. The problem is not that the Commonwealth argued credibility. Of course it could do so. The problem is that, after using improper questioning to force Jones into the liar-or-truth-teller posture, the Commonwealth then returned in closing to the same ground by inviting the jury to view Wilson and the officers as having "no reason to lie." In a case where the defense had developed record-based reasons to question Wilson's motives, reliability, and credibility, and in which the officers by their own admission had nothing to lie about in that they did not witness the disputed transaction, that closing argument brushed aside real credibility concerns the jury was entitled to weigh. The defense did not object to this statement either (as a misrepresentation of the facts in evidence, for instance), and the jury was free to reject this argument by the prosecutor if it found it unpersuasive. But it was much more likely to find it persuasive because of the *Moss*-violating questions that had been brought to bear against Jones on cross-examination. The closing argument therefore aggravated the prejudice created by the improper cross-examination.

we do not decide that resentencing dispute. Nothing in this opinion should be read as resolving whether the June 6 entry constituted a final judgment for resentencing-authority purposes, whether the error the court cited in the resentencing hearing was clerical or judicial in nature, or whether the sentencing issue would otherwise entitle Jones to relief. We addressed the June-to-August procedural sequence above only as necessary to address the Commonwealth's threshold claim that the conviction-related appeal is untimely.

## VI. Conclusion

For the foregoing reasons, the judgment of the Bath Circuit Court is reversed, and this matter is remanded for a new trial.

All sitting. Lambert, C.J.; Bisig, Goodwine, Nickell, and Thompson, JJ., concur. Keller, J., concurs in result only.


COUNSEL FOR APPELLANT:

Aaron Reed Baker
Kathleen K. Schmidt
Assistant Public Advocates

COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General

J. Grant Burdette
Assistant Solicitor General